619 S.E.2d 197

James A. CALVERT, Jr., an Individual and as Representative of the Estate of James A. Calvert, Sr., Deceased; Kim Marie Kizer, an Individual; Robin Calvert Boyias, an Individual; and William Carlyle Calvert, an Individual, Plaintiffs Below, Petitioners in No. 31789, Respondents in Nos. 31788 & 31790,

v.

William SCHARF, an Individual; And Bowles Rice McDavid Graff & Love, P.L.L.C., a West Virginia Professional Limited Liability Corporation, Defendants Below, Respondents in No. 31789, Petitioners in Nos. 31788 & 31790.

Nos. 31788–31790.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 8, 2005.

Decided June 30, 2005.

Timothy J. LaFon, Michael J. Del Giudice, Ciccarello, Del Giudice & LaFon, Charleston and Carl S. Kravitz, Blair G. Brown, Zuckerman Spaeder, L.L.P., Washington, DC, for James A. Calvert, Jr., et al.

Charles R. Bailey, Billie Jo Streyle, Bailey and Wyant, P.L.L.C., Charleston, for William H. Scharf.

Michael J. Farrell, Robert L. Hogan, Farrell, Farrell & Farrell, L.C., Huntington, for Bowles Rice McDavid Graff & Love, P.L.L.C.

DAVIS, Justice:

In this action for attorney malpractice in the drafting of a will, the circuit court of Kanawha County certifies nine questions for determination by this Court. The subject will purported to exercise a power to appoint granted to Erma D. Surface, deceased, by her deceased husband's will. This malpractice action was brought by James A. Calvert, Jr., individually and as personal representa-

tive of the estate of his father, James A. Calvert, Sr., deceased, and his siblings (also children of James A. Calvert, Sr.), Kim Marie Kizer, Robin Calvert Boyias, and William Carlyle Calvert (hereinafter collectively referred to as "the Calverts"), who are all beneficiaries under Erma D. Surface's will. After carefully considering the nine certified questions, the briefs and oral arguments of the various parties, the record submitted on appeal, and the pertinent authorities, we reformulate the certified questions into one question and conclude that, while beneficiaries of a will have limited standing to assert a malpractice claim alleging negligence on the part of the lawyer who prepared the will, the Calverts may not pursue their cause of action under the particular facts of this case as they have failed to establish that they have suffered damages that were proximately caused by attorney malpractice.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The facts underlying the instant dispute began with the wills of Garrett H. Surface (hereinafter referred to as "Garrett") and Erma D. Surface (hereinafter referred to as "Erma"). Garrett and Erma Surface were husband and wife. There were apparently no children born of the marriage, but Garrett and Erma each had a child from a prior marriage. Garrett's child, a daughter, is Delores Carole Surface (hereinafter referred to as "Delores" or "Garrett's daughter").[1] Erma's child, a son, is James A. Calvert, Sr.[2]

On July 18, 1978, Garrett executed his Last Will and Testament (hereinafter referred to as "Garrett's will"). Garrett's will, which was drafted by attorney John Smallridge, established a marital trust and granted a testamentary general power of appointment over the property in the marital trust to his wife, Erma. This provision, located at "ITEM FIVE," "Paragraph I.B." of Garrett's will, states:

My wife shall have the right and power to appoint, as hereinafter provided, by her Last Will and Testament the entire principal of the MARITAL TRUST, as constituted at the time of her death, to her estate, to her creditors, or to such person or persons as she may designate in her sole, absolute and unrestricted discretion. The aforesaid power of appointment shall be exercisable by my wife in her Will by a separate ITEM in which she specifically refers to this power of appointment and in which ITEM she does not dispose of or attempt to dispose of any other property. This power of appointment in my wife shall be exercisable by her, alone and in all events. If, however, no marital deduction is allowable for federal estate tax purposes at the time of my death, then this paragraph I B shall have no effect, and my wife shall have no power of appointment over the principal of the MARITAL TRUST.

Garrett's will also established a charitable remainder unitrust to pay five percent of its net fair market value annually to his daughter Delores, commencing upon Garrett's death (hereinafter referred to as the "Residuary Trust"). Upon the death of Garrett's daughter, the principal of the Residuary Trust was to be split equally between the Union Mission Settlement, Inc., and World Vision, Inc. (hereinafter referred to as "the Default Charities"). In the event that Erma failed to exercise the power of appointment granted to her in Garrett's will, the principal of the marital trust was to be combined with the Residuary Trust created for the benefit of Delores and the Default Charities:

If my wife should fail, in whole or in part, to exercise by her Last Will and Testament the power of appointment given to her in respect to the principal of the MARITAL TRUST, the Trustee shall add the principal remaining in the MARITAL TRUST, not validly appointed as aforesaid, to the principal of the RESIDUARY TRUST; and thereafter the combined principals of the MARITAL TRUST and

---

1. Delores is not a party to the instant action; however, she was involved in an earlier, related, declaratory judgment action that will be discussed momentarily in these facts.

2. As we will elaborate shortly, the plaintiffs in this action are the children of James A. Calvert, Sr., who is deceased, as well as the executor of his estate (who is his son, James A. Calvert, Jr.).

the RESIDUARY TRUST shall be administered and distributed as hereinafter provided.

Garrett's will, "ITEM FIVE," "Paragraph I.C."

Garrett died in May, 1979. Shortly thereafter, attorney Smallridge prepared a will for Erma, which, the parties agree, contained a valid and effective exercise of the general testamentary power of appointment granted to Erma in Garrett's will. However, in 1984 Erma retained the law firm now known as Bowles Rice McDavid Graff & Love, P.L.L.C. (hereinafter referred to as "Bowles Rice") to perform estate planning services on her behalf. Pursuant to this engagement, William Scharf, then a partner at Bowles Rice, drafted a new will for Erma (hereinafter referred to as "Erma's will"), along with several trust documents including a revocable trust (hereinafter referred to as "the Living Trust"). With respect to exercising Erma's power of appointment as granted in Garrett's will, Erma's will stated:

*SECOND:* All the rest, residue and remainder of my property and estate, of whatever nature and wherever situate, including all property over which I have a power of appointment under Item Five I B of the will of my husband, GARRETT H. SURFACE, who died May 2, 1979, which said will is dated July 18, 1978, and is of record in the office of the Clerk of the County Commission of Kanawha County, West Virginia, in Will Book 321, at page 160, which power of appointment I hereby specifically exercise, after payment of any debts, expenses of administration and taxes, I give, devise and bequeath to the Trustee under the existing Trust Agreement executed by me as Grantor and by the Bank of West Virginia as Trustee, on June 1, 1984, at 9:30 A.M., and establishing a revocable trust [ (the Living Trust) ] for my benefit, to be added to the principal of the trust assets held thereunder as if said rest, residue and remainder of my estate had originally formed a part thereof, and to be held, administered and distributed in accordance with the provisions of said Trust Agreement.

Thus, Erma sought to appoint the Living Trust as beneficiary of the property over which she had been granted the power of appointment by Garrett's will. In turn, the beneficiaries of the Living Trust were the Calverts (plaintiffs in this malpractice action). Subsequently, the Living Trust was amended on four separate occasions. The final two amendments were prepared by the law firm of Jackson Kelly, L.L.P. In its final version, the Living Trust established five charitable unitrusts (one for each of the Calverts) as additional beneficiaries. Under the amended terms, each Calvert was to receive annual distributions from a corresponding unitrust. Five charities (hereinafter referred to as the "Appointed Charities"), one corresponding to each unitrust, were appointed to receive the principal remaining in its designated unitrust upon the death of the corresponding Calvert.

Erma died in 1999. Subsequent to her death, One Valley Bank, successor-in-interest to the Bank of West Virginia, as executor of Erma's estate and as trustee of Erma's Living Trust, Garrett's Marital Trust, and Garrett's Residuary Trust, filed a declaratory judgment action in the Circuit Court of Kanawha County, West Virginia.[3] One Valley Bank sought an affirmative declaration that it should distribute the assets of Garrett's Marital Trust into the Living Trust. In addition to One Valley Bank, the parties to the declaratory judgment action were the Calverts, the Calverts' minor children, the Appointed Charities, Garrett's daughter Delores, and the Default Charities.

The issue in the declaratory judgment action was whether Erma's will complied with the requirements established in Garrett's will for the exercise of her power of appointment, as Garrett's will had required the appointment be by "a separate ITEM in which ... she does not dispose of or attempt to dispose of any other property." Erma's will exercised the power of appointment in a residuary clause that disposed of all of Erma's property. If Erma's will did not validly exercise the power of appointment, the Marital Trust would not fund the Living Trust of

---

**3.** Civil Action No. 99-C-2681.

which the Calverts and the Appointed Charities are the beneficiaries. Instead, under the terms of Garrett's will, the Marital Trust would fund the Residuary Trust, of which Garrett's daughter Delores and the Default Charities are the beneficiaries.

Shortly before a scheduled hearing on cross-motions for summary judgment in the declaratory judgment action, the parties notified Judge Charles E. King, Jr., that a settlement had been reached. Following a hearing held on March 1, 2002, Judge King entered an order approving the settlement. The settlement agreement and settlement order provided, in pertinent part, that the Residual Trust benefiting Delores and the Default Charities would receive 26.57% of the Marital Trust, and that the five trusts benefiting the Calverts and the Appointed Charities would receive 73.43% of the Marital Trust.[4] In addition, the settlement agreement and order provided that if the Calverts were to bring a legal malpractice action, then the Residual Trust benefiting Delores and the Default Charities would receive the first $100,000 from the net recovery and then 50% of every additional dollar of that recovery up to a designated ceiling.[5] The circuit court's order accepting the settlement expressly stated that "this Court specifically finds that monies to be paid to the Charitable Remainder Trust [(the Residual Trust)] as the result of the Malpractice Claims is not an assignment of any portion of the claim, but rather a promise to pay with recovery as a condition precedent to payment."

Apparently an attempt had been made to include Bowles Rice in the settlement negotiations pertaining to the declaratory judgment action, but Bowles Rice had refused to participate in mediation or to compromise any malpractice claims that the Calverts might have had against them by contributing to the settlement of the declaratory judgment action.

Thereafter, on March 12, 2002, the Calverts filed the instant legal malpractice action against Bowles Rice, Mr. Scharf and Jackson Kelly, L.L.P. As one component of their damages, the Calverts sought the amount that they were obligated to pay to settle the declaratory judgment action, including the amount up to $225,000 that they are obligated to pay from a recovery in this malpractice action. Jackson Kelly, L.L.P., offered to settle the malpractice claim against it for five thousand dollars. The Calverts accepted the settlement offer leaving Bowles Rice and Mr. Scharf as the only remaining defendants.

Bowles Rice and Mr. Scharf filed motions for summary judgment and partial summary judgment. Thereafter, Judge Gary L. Johnson, sitting by special assignment, certified nine questions for review by this Court.[6] We accepted the questions for review.

4. At the time of the settlement of the declaratory judgment action, the Marital Trust had a value of almost two million dollars.

5. Based on the value of the Marital Trust at the time of its distribution, Delores and the Default Charities received $524,383. The maximum additional amount potentially recoverable by them as a result of the Calverts' legal malpractice action is approximately $225,000.

6. The nine certified questions and the answers given by the circuit court are:

**Question No. 1:**
Whether an intended beneficiary of a will has standing to assert a legal malpractice claim against the attorney who prepared the will?
**Answer:**
Yes, the intended beneficiary of a will has standing.
**Question No. 2:**
If the intended beneficiaries have standing under current law to assert a legal malpractice claim against the attorney who drafted a will, does the fact that the drafting attorney's conduct occurred in 1984 present a question of retroactivity, and, if so, may the beneficiaries prosecute that claim?
**Answer:**
No question of retroactivity is presented. An intended beneficiary may prosecute such a claim.
**Question No. 3:**
Does West Virginia law require strict compliance with the donor's requirements for the exercise of a power of appointment in a will?
**Answer:**
Yes, strict compliance is required.
**Question No. 4(a):**
Whether the exercise of the power of appointment in Erma Surface's will was made effective by the operation of West Virginia Code § 41–1–4?
**Answer:**
No, West Virginia Code § 41–1–4 does not render effective the exercise of the Power of Appointment.
**Question No. 4(b):**

## II.

### CERTIFIED QUESTIONS

Before addressing the particular issues raised in this proceeding, we exercise our power to reformulate the questions certified to us by the circuit court. With respect to our authority to reformulate certified questions, we have held:

When a certified question is not framed so that this Court is able to fully address the law which is involved in the question, then this Court retains the power to reformulate questions certified to it under both the Uniform Certification of Questions of Law Act found in *W. Va. Code,* 51–1A–1, *et seq.* and *W. Va. Code,* 58–5–2 [1967], the statute relating to certified questions from a circuit court of this State to this Court.

Syl. pt. 3, *Kincaid v. Mangum,* 189 W.Va. 404, 432 S.E.2d 74 (1993). *See also* W. Va. Code § 51–1A–4 (1996) (Repl. Vol. 2000) ("The [S]upreme [C]ourt of [A]ppeals of West Virginia may reformulate a question certified to it."). *See, e.g., Potesta v. United States Fid. & Guar. Co.,* 202 W.Va. 308, 313 n. 9, 504 S.E.2d 135, 140 n. 9 (1998).

After careful consideration of the nine certified questions presented by the circuit court, we find it necessary to answer only one reformulated question in order to resolve the issues necessary to the resolution of this case:

May intended beneficiaries of a will maintain a claim of negligence against the lawyer who drafted the will when the intended beneficiaries have settled a declaratory judgment action.that, if litigated to its conclusion, would have resolved the issue of whether the will was. sufficiently drafted to exercise a power of appointment granted· to the testator.

Following a brief statement of the standard we apply in answering this question, we will proceed to our analysis.

## III.

### STANDARD OF REVIEW

We conduct plenary review of questions certified by a circuit court. "The appellate standard of review of questions of law answered and certified by a circuit court is *de novo.*" Syl. pt. 1, *Gallapoo v. Wal–Mart Stores, Inc.,* 197 W.Va. 172, 475 S.E.2d 172 (1996). *Accord Potesta v. United States Fid. & Guar. Co.,* 202 W.Va. 308, 314, 504 S.E.2d 135, 141; *Griffis v. Griffis,* 202 W.Va. 203, 208, 503 S.E.2d 516, 521 (1998); Syl. pt. 1,

Whether the Restatement of the law of Property (Second) §§ 18.3 and/or 23.2 cured the technical defects, if any, in the exercise of the power of appointment in Erma Surface's will?
**Answer:**
No, the referenced provisions of the Restatement do not cure the alleged technical defects in the exercise of the power of appointment.
**Question No. 5:**
In a legal malpractice action alleging the negligent drafting of a document, may the plaintiffs recover either or both of the following types of damages incurred in an action to validate the document, even if the document can be validated or reformed in the validation action: (1) legal fees and expenses of the validation action and (2) the amount paid in settlement of the validation action?
**Answer:**
Both types of damages are recoverable in a legal malpractice action even though the document can be validated, reformed or its defects otherwise "cured" in the validation action.
**Question No. 6:**
In a legal malpractice action alleging the negligent drafting of a document, are the plaintiffs barred from recovering damages if they settle an action to validate the document?

**Answer:**
No. Plaintiffs are not barred so long as the settlement is reasonable and made in good faith.
**Question No. 7:**
Whether a contingent obligation to pay a portion of a net recovery in a legal malpractice action is recoverable aś damages where the net recovery iś defined as the amount of the legal malpractice settlement or award reduced by the legal fees and costs incurred in litigating the malpractice claim?
**Answer:**
The definition of net recovery does not preclude the contingent obligation from being recovered as damages.
**Question No. 8:**
Whether a contingent obligation to pay a portion of a recovery in a legal malpractice action is an impermissible assignment of a portion of a legal malpractice claim and/or a violation of the public policy of West Virginia?
**Answer:**
Yes, the contingent obligation to pay a portion of a recovery in a legal malpractice action is an impermissible assignment of a portion of a legal malpractice claim and is also a violation of the public policy of West Virginia.

*Williamson v. Greene,* 200 W.Va. 421, 490 S.E.2d 23 (1997).

## IV.

## DISCUSSION

◼ In answering the reformulated certified question, we begin by examining the elements of a cause of action for negligence by a lawyer. We have repeatedly recognized, and now expressly hold, that, generally, " '[i]n a suit against an attorney for negligence, the plaintiff must prove three things in order to recover: (1) [t]he attorney's employment; (2) his[/ her] neglect of a reasonable duty; and (3) that such negligence resulted in and was the proximate cause of loss to the [plaintiff].' " *Keister v. Talbott,* 182 W.Va. 745, 748–49, 391 S.E.2d 895, 898–99 (1990) (citations omitted). *See also Sheetz, Inc. v. Bowles Rice McDavid Graff & Love, PLLC,* 209 W.Va. 318, 333 n. 13, 547 S.E.2d 256, 271 n. 13 (2001) (same); *Armor v. Lantz,* 207 W.Va. 672, 681, 535 S.E.2d 737, 746 (2000) (same); *McGuire v. Fitzsimmons,* 197 W.Va. 132, 136–37, 475 S.E.2d 132, 136–37 (1996) (same). We examine each of these factors in turn.

### A. The Attorney's Employment

◼ The attorney's employment is a factor that speaks to whether the attorney owed a duty to the person claiming to have been harmed by the attorney's negligence, as " '[n]o action for negligence will lie without a duty broken.' Syl. Pt. 1, in part, *Parsley v. General Motors Acceptance Corp.,* 167 W.Va. 866, 280 S.E.2d 703 (1981)." Syl. pt. 3, *Strahin v. Cleavenger,* 216 W.Va. 175, 603 S.E.2d 197 (2004). Where a malpractice claim involves a matter for which the plaintiff directly hired the attorney, there is no question that a duty was owed. However, in cases such as the instant one where there is no employment relationship between the lawyer and the malpractice plaintiffs, establishing the existence of a duty is critical to the plaintiffs' ability to go forward with their action. This is so because, without a duty owed, a person claiming to have been harmed

by a lawyer's negligence does not have standing to assert a claim. "[S]tanding is defined as '[a] party's right to make a legal claim or seek judicial enforcement of a duty or right.' " *Findley v. State Farm Mut. Auto. Ins. Co.,* 213 W.Va. 80, 94, 576 S.E.2d 807, 821 (2002) (quoting Black's Law Dictionary 1413 (7th ed. 1999) (second alteration in original)). Accordingly, in this section of the opinion, we will examine whether a lawyer preparing a will owes any duty to the beneficiaries of that will such that the beneficiaries may have standing to assert a cause of action against the lawyer for malpractice in the drafting of the testamentary document.

Traditionally, it was an accepted rule that a lawyer owed no duty to individuals who were not clients:

Over a century ago, the United States Supreme Court held that a third party not in privity of contract with an attorney may not maintain a legal malpractice action against an attorney for negligence absent fraud or collusion. *See National Sav. Bank v. Ward,* 100 U.S. 195, 205–206, 25 L.Ed. 621 (1879).

*Blair v. Ing,* 95 Hawai'i 247, 253, 21 P.3d 452, 458 (2001). This rule was "premised upon two basic concerns. First, absent a requirement of privity, parties to a contract for legal services could easily lose control over their agreement. Second, imposing a duty to the general public upon lawyers would expose lawyers to a virtually unlimited potential for liability." *Schreiner v. Scoville,* 410 N.W.2d 679, 681 (Iowa 1987) (citation omitted). *Accord Needham v. Hamilton,* 459 A.2d 1060, 1061–62 (D.C.1983). As the parties to this action correctly point out, however, a majority of courts have recognized an exception to this general principle and now allow beneficiaries of a will to maintain an action against the lawyer who drafted the will. *See generally* 4 Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* § 32.4, at 735 (5th ed. 2000) ("Although the rationale varies, the prevailing rule is that an attorney can be liable for negligence to the intended beneficiary or heirs.") (footnote collecting cases omitted).[7] *See also Blair v. Ing,* 95 Hawai'i

---

7. Stated conversely, "only a small minority of jurisdictions [have] refused to extend negligence liability beyond the confines of the attorney-client relationship and into the will drafting or trust

at 253, 21 P.3d at 458 ("Although the strict privity requirement remains prevalent in many factual circumstances of legal malpractice, the trend in estate planning is to allow a legal malpractice cause of action brought by non-clients." (citation omitted)); *Schreiner v. Scoville,* 410 N.W.2d at 681 ("The trend in recent years ... has been to allow some relaxation of the privity standard in severely limited situations.").[8] This Court has not expressly adopted a rule recognizing that lawyers owe a duty to the intended beneficiaries of a will.[9] In deciding whether we will follow the majority rule, we will examine decisions of other jurisdictions.

One court discussing the two concerns that form the basis for the general rule requiring privity concluded those concerns do not apply in the context of the lawyer/non-client beneficiary relationship. *Needham v. Hamilton,* 459 A.2d 1060. According to the *Needham* court, a lawyer/non-client beneficiary relationship does not present a circumstance

> in which the ability of a nonclient to impose liability would in any way affect the control over the contractual agreement held by the attorney and his client, as the interests of the testatrix and the intended beneficiary with regard to the proper drafting and execution of the will are the

same. Additionally, this duty does not extend to the general public but only to a nonclient who was the direct and intended beneficiary of the attorney-client relationship.

459 A.2d at 1062–63. The *Needham* court ultimately held that "the better view is that which allows the intended beneficiary of a will a malpractice cause of action against the drafting attorneys." *Id.* at 1062.

Moreover, courts permitting a non-client beneficiary to maintain a malpractice action against the lawyer who drafted the will have expressed practical reasons for allowing such lawsuits, including the fact that often the beneficiary is the only party who could properly bring such an action:

> [O]ne of the main purposes which the transaction between [the lawyer] and the testator intended to accomplish was to provide for the transfer of property to [the beneficiaries]; the damage to [the beneficiaries] in the event of invalidity of the bequest was clearly foreseeable; it became certain, upon the death of the testator without change of the will, that [the beneficiaries] would have received the intended benefits but for the asserted negligence of [the lawyer]; and if [beneficiaries] are not

contexts." 4 Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* § 32.4, at 734 (5th ed. 2000) (footnote collecting cases omitted).

**8.** *But see Peterson v. Anderson,* 719 So.2d 216, 218 (Ala.Civ.App.1997) ("The law in Alabama is that '[a] person authorized to practice law owes no duty except that arising from contract or from a gratuitous undertaking.'" (citation omitted)); *Lilyhorn v. Dier,* 214 Neb. 728, 730, 335 N.W.2d 554, 555 (1983) (finding beneficiary lacked standing to bring malpractice action against lawyer who drafted will because, "as a general rule the duty to exercise reasonable care and skill which a lawyer owes his client ordinarily does not extend to third parties."); *Conti v. Polizzotto,* 243 A.D.2d 672, 672, 663 N.Y.S.2d 293, 294 (N.Y.App.Div.1997) (dismissing legal malpractice action brought by will beneficiaries for failure to state a claim, and declaring that "'[t]he well-established rule in New York with respect to attorney malpractice is that absent fraud, collusion, malicious acts or other special circumstances, an attorney is not liable to third parties, not in privity, for harm caused by professional negligence'" (citations omitted)); *Simon v. Zipperstein,* 32 Ohio St.3d 74, 77, 512 N.E.2d 636, 638 (1987) (finding beneficiary of will could not

maintain a malpractice action against attorney who drafted will based upon rule that "'[a]n attorney is immune from liability to third persons arising from his performance as an attorney in good faith on behalf of, and with the knowledge of his client, unless such third person is in privity with the client or the attorney acts maliciously'" (citation omitted) (alteration in original)); *Guest v. Cochran,* 993 S.W.2d 397, 406 (Tex.App.1999) (stating "[t]he Texas Supreme Court has expressly rejected a cause of action by a beneficiary under a will or a trust against the testator's attorney for legal malpractice in the drafting of such testamentary documents." (citations omitted)).

**9.** This Court has previously observed the existence of such a duty. *See Aikens v. Debow,* 208 W.Va. 486, 500–01, 541 S.E.2d 576, 590–91 (2000) (explaining how the existence of a "special relationship" may give rise to liability and listing, among other examples, that attorneys have been held liable to beneficiaries of negligently prepared wills); *First Nat'l Bank of Bluefield v. Crawford,* 182 W.Va. 107, 110 n. 6, 386 S.E.2d 310, 313 n. 6 (1989) (observing that attorneys may be held liable to beneficiaries for negligent preparation of a will).

permitted to recover for the loss resulting from negligence of the draftsman, no one would be able to do so, and the policy of preventing future harm would be impaired. *Lucas v. Hamm,* 56 Cal.2d 583, 589, 15 Cal. Rptr. 821, 824, 364 P.2d 685, 688 (1961) (concluding that lack of privity between beneficiaries under a will and the lawyer who prepared the will did not preclude beneficiaries from maintaining an action in tort against the lawyer). Likewise,

> if a lawyer who prepares a will erroneously is to be accountable for breach of the duty he owed his deceased client, the beneficiaries of the will must be able to maintain an action. No one else has a sufficient interest, can show damage, or possesses the [volition], to do so. "It would be unconscionable to permit admitted actionable conduct to be insulated by the fortuitous death of the person recognized in the law to have standing to prosecute such a claim, where the brunt of the injury from such conduct is born by a living party."

*Mieras v. DeBona,* 452 Mich. 278, 290–91, 550 N.W.2d 202, 207–08 (1996) (citation omitted). *See also Heyer v. Flaig,* 70 Cal.2d 223, 228, 74 Cal.Rptr. 225, 229, 449 P.2d 161, 165 (1969) ("Indeed, the executor of an estate has no standing to bring an action for the amount of the bequest against an attorney who negligently prepared the estate plan, since in the normal case the estate is not injured by such negligence except to the extent of the fees paid; only the beneficiaries suffer the real loss."), *superseded by statute on other grounds as stated in Laird v. Blacker,* 279 Cal.Rptr. 700 (Cal.Ct.App.1991); *Schreiner v. Scoville,* 410 N.W.2d 679, 682 ("[I]f no cause of action could be maintained, the very purpose for which the lawyer was retained (*i.e.,* disposition of the testator's estate in accord with his or her wishes) would be frustrated without remedy." (citations omitted)); *Karam v. Law Offices of Ralph J. Kliber,* 253

Mich.App. 410, 429, 655 N.W.2d 614, 625 (2002) ("In this case, because the beneficiaries, not the estate, suffered the real loss, the personal representatives have no standing to assert a cause of action.").

It has also been explained that

> [a] promise to prepare a will pursuant to the instructions of a testatrix states a direct obligation to render a performance beneficial to her, i.e., the creation of a document which would enable her upon her death to effect the transfer of her assets to the beneficiaries named in her instructions....
>
> ... If the defendant [lawyer] thwarted the wishes of the testatrix, an intended beneficiary would also suffer an injury in that after the death of the testatrix the failure of her testamentary scheme would deprive the beneficiary of an intended bequest. It therefore follows that the benefit which the plaintiff would have received under a will prepared in accordance with the contract is so directly and closely connected with the benefit which the defendant promised to the testatrix that ... the [beneficiary] would be able to enforce the contract.

*Stowe v. Smith,* 184 Conn. 194, 197–98, 441 A.2d 81, 83 (1981) (internal citations omitted). Stated otherwise,

> the cases have repeatedly held that an attorney who assumes preparation of a will incurs a duty not only to the testator client, but also to his intended beneficiaries, and lack of privity does not preclude the testamentary beneficiary from maintaining an action against the attorney based on either the contractual theory of third party beneficiary or the tort theory of negligence.

*Ventura County Humane Soc'y v. Holloway,* 40 Cal.App.3d 897, 903, 115 Cal.Rptr. 464, 468 (1974).[10]

10. There is also no question that the element of foreseeability is present in the context of the harm caused to a beneficiary by the negligence of a lawyer who prepares the will.

> When an attorney undertakes to fulfill the testamentary instructions of his client, he realistically and in fact assumes a relationship not only with the client but also with the client's

intended beneficiaries. The attorney's actions and omissions will affect the success of the client's testamentary scheme; and thus the possibility of thwarting the testator's wishes immediately becomes foreseeable. Equally foreseeable is the possibility of injury to an intended beneficiary. In some ways, the beneficiary's interests loom greater than those of

We note, however, that the recognition that a non-client beneficiary may have a cause of action for malpractice against a will-drafting lawyer is not without limitation. One of the primary concerns expressed by courts in recognizing the standing of a non-client beneficiary to sue a lawyer with whom he or she is not in privity is that lawyers should not be exposed to " 'a virtually unlimited potential for liability.' " *Holsapple v. McGrath*, 575 N.W.2d 518, 521 (Iowa 1998) (citation omitted). Accordingly, "[b]ecause no privity exists [between a lawyer and an intended beneficiary], courts extending lawyer liability to nonclient-third parties generally have limited a lawyer's liability to the direct, intended, and specifically identifiable beneficiaries of the testator's testamentary disposition." *Schreiner v. Scoville*, 410 N.W.2d 679, 682 (citations omitted). Likewise, some courts have limited the evidence that may be used to establish the testator's intent to that which is expressly stated in the testamentary instrument. For example, the rule adopted by the *Holsapple* court holds that

> [f]or third parties to maintain a cause of action against the preparer of a testamentary instrument, they must prove that "as a direct result of the lawyer's professional negligence the testator's intent *as expressed in the testamentary instruments* is frustrated in whole or in part and the beneficiary's interest in the estate is either lost, diminished, or unrealized."

575 N.W.2d at 521 (alteration in original) (citation omitted).

Moreover, the California judiciary addresses the competing interests of lawyers and beneficiaries by recognizing that beneficiaries may sue a lawyer for negligent preparation of a will that "caused them to lose their testamentary rights" only "where the attorney's engagement was intended to benefit the nonclient, and the imposition of liability would not place an undue burden upon the legal profession." *Osornio v. Weingarten*, 124 Cal.App.4th 304, 312, 21 Cal.Rptr.3d 246, 248 (2004) (citing *Lucas v. Hamm*, 56 Cal.2d

the client. After the latter's death, a failure in his testamentary scheme works no practical effect except to deprive his intended beneficiaries of the intended bequests.

583, 15 Cal.Rptr. 821, 364 P.2d 685). Additionally, California courts have established that

> the attorney's liability towards the intended beneficiaries under the will is not automatic. The cases underline that the determination whether in a specific case the attorney should be held responsible to a third person not in privity constitutes a policy matter. and involves balancing factors, among which are [(1)] the extent to which the transaction was intended to affect the plaintiff, [(2)] the *foreseeability of harm* to him, [(3)] the *degree of certainty that the plaintiff suffered injury*, [(4)] the *closeness of the connection* between the defendant's conduct and the injury suffered, [(5)] the moral blame attached to the defendant's conduct, [(6)] and the policy of preventing future harm.

*Ventura County Humane Soc'y v. Holloway*, 40 Cal.App.3d 897, 903, 115 Cal.Rptr. 464, 468 (citations omitted).

Additionally, the state of Florida has addressed certain evidentiary problems that are inherent in estate planning malpractice cases brought by beneficiaries and, to remedy these difficulties, has declined to allow extrinsic evidence on the issue of the testator's intent:

> Because the client is no longer alive and is unable to testify, the task of identifying those persons who are intended third-party beneficiaries causes an evidentiary problem closely akin to the problem of determining the client's general testamentary intent. To minimize such evidentiary problems, the will was designed as a legal document that affords people a clear opportunity to express the way in which they desire to have their property distributed upon death. To the greatest extent possible, courts and personal representatives are obligated to honor the testator's intent in conformity with the contents of the will. . . .

*Heyer v. Flaig*, 70 Cal.2d 223, 228, 74 Cal.Rptr. 225, 228–29, 449 P.2d 161, 164–65.

If extrinsic evidence is admitted to explain testamentary intent, as recommended by the petitioners, the risk of misinterpreting the testator's intent increases dramatically. Furthermore, admitting extrinsic evidence heightens the tendency to manufacture false evidence that cannot be rebutted due to the unavailability of the testator. For these reasons, we adhere to the rule that standing in legal malpractice actions is limited to those who can show that the testator's intent *as expressed in the will* is frustrated by the negligence of the testator's attorney.

*Espinosa v. Sparber, Shevin, Shapo, Rosen & Heilbronner,* 612 So.2d 1378, 1380 (Fla. 1993). *See also Walker v. Lawson,* 526 N.E.2d 968, 968 (Ind.1988) ("[A]n action will lie by a beneficiary under a will against the attorney who drafted that will on the basis that the beneficiary is *a known third party.*" (emphasis added)); *Schreiner v. Scoville,* 410 N.W.2d 679, 682 ("[W]e conclude a lawyer owes a duty of care to the direct, intended, and specifically identifiable beneficiaries of the testator as expressed in the testator's testamentary instruments.").[11] *But see Teasdale v. Allen,* 520 A.2d 295, 296 (D.C. 1987) (refusing "to adopt any per se rule that standing may be granted only to those whose precise status as intended beneficiaries can be discerned from the four corners of the will itself.").

■ Plainly, then, while a majority of courts grant intended beneficiaries standing to sue a lawyer who negligently drafts a will, they have imposed various limitations on such a cause of action. Accordingly, we now hold that direct, intended, and specifically identifiable beneficiaries of a will have standing to sue the lawyer who prepared the will where it can be shown that the testator's intent, as expressed in the will, has been frustrated by negligence on the part of the

lawyer so that the beneficiaries' interest(s) under the will is either lost or diminished.

Applying this standard to the Calverts, it is clear that they are direct, intended, and specifically identifiable beneficiaries of Erma's will. Likewise, it is apparent from the face of her will that Erma intended for the Calverts to receive the benefit of her exercise of the power of appointment in question. Consequently, the Calverts have standing to assert that the negligence of the defendant lawyers frustrated this aspect of Erma's testamentary plan. Our analysis does not end here, however, as there are two more elements of a cause of action for legal malpractice that the Calverts must meet in order to maintain their action: neglect of a reasonable duty and damages.

### B. Neglect of a Reasonable Duty

■ The second element of a cause of action for attorney negligence is the neglect of a reasonable duty. This element in the context of a lawyer malpractice case brought by an intended beneficiary of a will does not differ significantly from other types of negligence cases; thus, we need not belabor our discussion. For ease of discussion in the *instant* case, we will assume without deciding that there was neglect of a reasonable duty in the drafting of Erma's will. We make this assumption because it is not a dispositive factor in our resolution of this case. Thus, we proceed to the issue that is pivotal to our resolution of this case—damages.

### C. Damages

■ With respect to damages in an action against a lawyer for malpractice, we have held that "[i]n an attorney malpractice action, proof of the attorney's negligence alone is insufficient to warrant recovery; it must also appear that the client's damages

---

**11.** *Compare Pivnick v. Beck,* 326 N.J.Super. 474, 741 A.2d 655 (1999). In *Pivnick,* the New Jersey Superior Court found that extrinsic evidence as to the testator's intent should be allowed in legal malpractice suits brought by beneficiaries, but the Court required proof by clear and convincing evidence, explaining that

[w]e decline to follow defendants' invitation to preclude all legal malpractice suits by beneficiaries unless those suits involve a lawyer's

negligence inhibiting the expressed intent of the testamentary document. In our opinion, such a drastic course may eliminate worthy suits and cause injustice. We conclude ... that the policies involved ... can be satisfactorily protected by enhancing the applicable burden of proof in this type of legal malpractice action.

326 N.J.Super. at 483, 741 A.2d at 660.

are the direct and proximate result of such negligence." Syl. pt. 2, *Keister v. Talbott,* 182 W.Va. 745, 391 S.E.2d 895 (1990). Thus, in order to prevail in a malpractice action against a lawyer, the plaintiff must establish not only his or her damages, but must additionally establish that, but for the negligence of the lawyer, he or she would not have suffered those damages.

The Calverts contend that they should not be required to prove that they would have lost the declaratory judgment action in order to prevail in their malpractice action. Instead, they suggest that merely establishing that they were sued in the declaratory judgment action should be sufficient to establish proximate cause. We reject this position.

In Syllabus point 3 of *Keister,* we explained that "[d]amages arising from the negligence of an attorney are not presumed, and a plaintiff in a malpractice action has the burden of proving both his loss and its causal connection to the attorney's negligence." 182 W.Va. 745, 391 S.E.2d 895. Without the requisite causal connection between an attorney's malpractice and a loss to the client, a malpractice case simply cannot go forward. *See, e.g., Harrison v. Casto,* 165 W.Va. 787, 271 S.E.2d 774 (1980) (finding no error in lower court's dismissal of case alleging malpractice against an attorney who failed to file a complaint on behalf of client upon finding that, although the attorney did not file a complaint, the client had not been harmed by the failure as the statute of limitations on that action had not run at the time the malpractice action had been instituted).

Placing this rule in the context of negligence in the drafting of a will, it is clear that an intended beneficiary must suffer an actual loss and that loss must be the direct result of the lawyer's negligence. If a lawyer is negligent in drafting a provision in a will, but the defect is cured so that the intended beneficiary receives his or her bequest pursuant to the will, then there is no causal connection between the attorney's negligence and the beneficiary's damages, because the beneficiary has not suffered damages proximately caused by the attorney's negligence. One court has stated this proposition thusly:

the contention that respondents [(lawyers)] owed a duty of care towards appellant class as potential beneficiaries, *even in the absence of an allegation of a clear causal connection between the claimed malpractice and the alleged loss and notwithstanding the fact that appellants did receive their testamentary share,* is not supported by the existing case authorities. Appellants' position therefore can only be construed as a request to extend the scope of the attorney's liability so that any defects in wills which result in litigation would also constitute actionable legal malpractice. Neither appellants nor amicus curiae, however, advance any cogent reasons why the scope of an attorney's duty should be so extended under [existing case law] and/or on the basis of general legal policy.

*Ventura County Humane Soc'y v. Holloway,* 40 Cal.App.3d 897, 904, 115 Cal.Rptr. 464, 469 (emphasis added). *See also Schreiner v. Scoville,* 410 N.W.2d 679, 683 ("If the testator's intent, as expressed in the testamentary instruments, is fully implemented, no further challenge will be allowed. Thus, a beneficiary who is simply disappointed with what he or she received from the estate will have no cause of action against the testator's lawyer." (citation omitted)). *Cf. Blair v. Ing,* 95 Hawai'i 247, 259, 21 P.3d 452, 464 ("An attorney cannot be held liable for every mistake made in his or her practice .... Such a blanket duty would possibly 'amount to a requirement to draft litigation proof legal documents. This unlimited liability ... would result in a speculative and almost intolerable burden on the legal profession ....' " (internal citations omitted) (quoting *Ventura,* 40 Cal.App.3d at 905, 115 Cal.Rptr. at 469)).

For these reasons, we wholeheartedly reject the Calverts' contention that they are entitled to damages merely because they were called into court by virtue of the declaratory judgment action. Adopting such a rule as proposed by the Calverts would require lawyers to draft litigation-proof documents. The result would be an excessive potential for liability that would place an extraordinarily unreasonable burden upon the legal profession. Instead, under West Virginia law, the Calverts are required to establish they suffered an actual loss and that the loss

**696**

was proximately caused by negligence in the drafting of Erma's will. *See* Syl. pts. 2 & 3, *Keister v. Talbott,* 182 W.Va. 745, 391 S.E.2d 895.

If, in the instant case, the declaratory judgment action had proceeded to a final judgment, the question of whether or not the Calverts have suffered any loss resulting from negligence in the drafting of Erma's will would have been definitively answered. However, due to their settlement of the declaratory judgment action, there has been no final judicial determination as to whether any negligence in the drafting of Erma's will proximately caused injury to the Calverts.

The Calverts contend that they sustained damages as a result of the settlement they voluntarily reached with Delores and the Default Charities. Specifically, the Calverts seek to recover the portion of the estate already paid over to Delores and the Default Charities as part of their settlement of the declaratory judgment action, as well as additional amounts they have promised to pay in the event they are successful in this action for legal malpractice. These damages, which the Calverts have either voluntarily paid or voluntarily agreed to pay, simply bear no causal relationship to any negligence on the part of the attorneys who drafted Erma's will. Had the declaratory judgment action proceeded to its conclusion and resulted in a final judicial determination that Erma's exercise of her power of appointment had failed, then the causal connection between the attorney's negligence and any losses sustained by the Calverts would have been established. However, the Calverts' voluntary settlement of the declaratory judgment action precluded any such determination. Thus, as a matter of law, no cause of action exists. Accordingly, we answer the reformulated certified question in the negative and find that the Calverts may not maintain their action for malpractice against Mr. Scharf and Bowles Rice.

## V.

## CONCLUSION

For the reasons explained in the body of this opinion, we conclude that the Calverts'

status as beneficiaries of Erma's will did not deprive them of standing to bring an action for negligence against the lawyers who prepared the will. However, because they have failed to establish that they have suffered damages that were proximately caused by attorney malpractice, they may not maintain their action for malpractice against Mr. Scharf and Bowles Rice.

Certified question answered.

Justices MAYNARD and BENJAMIN, deeming themselves disqualified, did not participate in the decision of this case.

Judge FRANK E. JOLLIFFE sitting by temporary assignment.