671 S.E.2d 789

**TIMBER RIDGE, INC., Plaintiff Below,**

v.

**HUNT COUNTRY ASPHALT & PAVING, LLC, and Jeffrey D. Greenburg Defendants Below.**

**No. 33877.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 23, 2008.

Decided Dec. 10, 2008.

Curtis G. Power, III, Amanda M. Wiseley, Bowles Rice McDavid Graff & Love, LLP, Winchester, Virginia, for Plaintiff.

J. Michael Cassell, Campbell Miller Zimmerman, PC, Charles Town, for Defendants.

**BENJAMIN, Justice:**[1]

In this case, the Court is presented with two questions regarding whether a civil cause of action may be maintained against a landowner by a contractor unlicensed in West Virginia for work done in West Virginia. These two questions, certified to the Court by the United States District Court for the Northern District of West Virginia pursuant to the Uniform Certification of Questions of Law Act, W. Va.Code §§ 51–1A–1, *et seq.* (1996), by order dated January 14, 2008, arise from a motion by the landowner seeking summary judgment against a counterclaim filed against it by the unlicensed contractor.

## I.

### FACTUAL AND PROCEDURAL HISTORY

Plaintiff Timber Ridge, Inc. (hereinafter "Timber Ridge"), the landowner herein, entered into a contract with defendant Hunt Country Asphalt & Paving, LLC, to provide materials and labor for certain improvements of a camp for youths and adults in Hampshire County, West Virginia, for a contract price of $109,610.00. At the time work was being performed under the contract, defendants Hunt Country Asphalt & Paving, LLC and Jeffrey Greenburg[2] (hereinafter collectively "Hunt Country") did not have a West Virginia contractor's license and had not obtained a West Virginia contractor's license at the time of the district court's certification order.

Timber Ridge commenced this action against Hunt Country in the Circuit Court of Hampshire County, West Virginia, on January 26, 2005, alleging breach of contract, breach of warranty and negligence. After Hunt County removed the action to the United States District Court for the Northern District of West Virginia, Timber Ridge filed an amended complaint asserting breach of

---

1. Pursuant to an administrative order entered on September 11, 2008, the Honorable Thomas E. McHugh, Senior Status Justice, was assigned to sit as a member of the Supreme Court of Appeals commencing September 12, 2008, and continuing until the Chief Justice determines that assistance is no longer necessary, in light of the illness of Justice Joseph P. Albright.

2. It appears that Jeffrey Greenburg is the owner of Hunt Country Asphalt & Paving, LLC.

contract, breach of warranty, negligence and fraud in the inducement. Hunt Country counterclaimed alleging that Timber Ridge had breached their contract and seeking $80,000.00 in damages.

Thereafter, Timber Ridge filed a motion for summary judgment on Hunt Country's counterclaim, claiming that Hunt County should not be permitted to pursue its counterclaim because it did not have a West Virginia contractor's license when the contract was entered into and while the work was being performed thereunder. The district court deferred ruling upon the motion and instead certified the above questions to this Court.

## II.

### CERTIFIED QUESTIONS

By its order of January 14, 2008, the District Court certified two questions to this Court pursuant to the Uniform Certification of Questions of Law Act, W.Va.Code §§ 51–1A–1, et seq. (1996). Based upon our interpretation of the underlying legal controversy, being a motion for summary judgment by Timber Ridge, and with due consideration of the language originally employed by the District Court, we have reformulated the second question certified by the District Court, pursuant to W.Va.Code § 51–1A–4 (1996).[3] The two questions certified for our review (noting our reformulation of the second question), including the District Court's answers to the same, are:

1. Whether a contractor who does not have a West Virginia contractor's license may utilize the courts to maintain a claim or counterclaim against the property owner?

The District Court answered in the negative.

2. If not, whether a contractor who does not have a West Virginia contractor's license may utilize the courts to maintain a claim or counterclaim against the property owner in an attempt to prevent the contractor from pursuing a civil cause of action against the landowner?

The District Court answered in the negative.

For the reasons which follow, we answer the first question in the affirmative. By so answering the first question, the second question is effectively mooted and we therefore need not answer the second question.

## II.

### STANDARD OF REVIEW

We have consistently recognized that " '[a] de novo standard is applied by this court in addressing the legal issues presented by certified question from a federal district or appellate court.' Syl. Pt. 1, Light v. Allstate Ins. Co., 203 W.Va. 27, 506 S.E.2d 64 (1998)" Syl. pt. 2, Aikens v. Debow, 208 W.Va. 486, 541 S.E.2d 576 (2000). See also, Syl. pt. 1, Feliciano v. 7–Eleven, Inc., 210 W.Va. 740, 559 S.E.2d 713 (2001); Syl. pt. 1, T. Weston Inc. v. Mineral County, 219 W.Va. 564, 638 S.E.2d 167 (2006). Accordingly, we proceed with plenary review of the legal issues arising from the certified questions.

## III.

### DISCUSSION

#### A. The West Virginia Contractor Licensing Act

The West Virginia Contractor Licensing Act, W. Va.Code §§ 21–11–1, et seq. (1991) (hereinafter the "Act"), was established to enforce:

---

**3.** According to W.Va.Code § 51–1A–4 (1996), "[t]he Supreme Court of Appeals of West Virginia may reformulate a question certified to it." Here, we have reformulated the second question for purposes of clarity as such question, based upon our review of the District Court's certifying order, relates directly to the first question and raises the issue of whether the landowner herein may seek summary judgment against the unlicensed contractor's counterclaim where the landowner knew that the contractor was not licensed in West Virginia.

The District Court originally framed the second question as follows:
2. Whether a landowner's knowledge of the contractor's unlicensed status estops the landowner from raising the contractor's unlicensed status.
The District Court answered in the negative.

"the policy of the state of West Virginia that all persons desiring to perform contracting work in this state be duly licensed to ensure capable and skilled craftsmanship utilized in construction projects in this state, both public and private, fair bidding practices between competing contractors through uniform compliance with the laws of this state, and protection of the public from unfair, unsafe and unscrupulous bidding and construction practices."

W. Va.Code § 21–11–2 (1991). In order to enforce this policy, the Act declared that on and after October 1, 1991,

no person shall engage in this state in any act as a contractor, as defined in this article, unless such person holds a license issued under the provisions of this article. No firm, partnership, corporation, association or other entity shall engage in contracting in this state unless an officer thereof holds a license issued pursuant to this article.

W. Va.Code § 21–11–6(a) (1991).[4]

Hunt Country concedes that it was a "contractor" as that term was defined by the 1991 statutory enactment in effect when it entered into the September 2003, contract with Timber Ridge and undertook to perform the work thereunder. Hunt County further concedes that neither it nor any of its officers were licensed as a contractor in West Virginia at the time the contract was entered into nor at any relevant time subsequent thereto.

West Virginia's relevant statutory law sets forth specific penalties for those who engage in contracting activity in West Virginia without first be properly licensed. For example, "[u]pon a determination that a person is en-gaged in contracting business in the state without a valid license," West Virginia Code § 21–11–13(a) (2002) requires either the commissioner of the West Virginia Department of Labor or the Contractor's Licensing Board to "issue a cease and desist order requiring such person to immediately cease all operations in the state." Any such cease and desist "order shall be withdrawn upon the issuance of a license to such person." W. Va.Code § 21–11–13(a) (2002). This statute further provides for the imposition of monetary and criminal penalties to be imposed after hearing in certain defined circumstances. W. Va.Code § 21–11–13 (2002). The statute is silent as to any prohibition of the bringing or maintaining of any civil action by an unlicensed contractor against a landowner, regardless of the landowner's knowledge of the contractor's license status.

### B. Arguments of the Parties

Timber Ridge contends that the district court answered the first certified question correctly, namely, that a contractor who does not have a contractor's license under the Act may not utilize the courts of this state to maintain a claim or counterclaim against the property owner. Timber Ridge claims that a majority of cases decided by courts in other states have so held under their contractor licensing acts, even though their acts, like the West Virginia Act, do not contain an express provision so providing. The rationale of those decisions, according to Timber Ridge, is that contractor licensing acts are designed to protect the public, as is the West Virginia Act, and that to allow an unlicensed contractor to use the courts of this state to recover compensation for its performance under a construction contract with a property owner

---

4. W.Va.Code § 21–11–6(a) was modified in 2004 to provide that "[n]o person *may* engage in this State in any act as a contractor, *or submit a bid to perform work as a contractor*, as defined in this article, unless ...." W.Va.Code § 21–11–6(a) (2004) (emphasis on changes made to statutory language in 2004). These statutory changes do not affect our analysis of the two certified questions at issue herein.

The term "contractor" is defined, in pertinent part, by W. Va.Code § 21–11–3(c) (1991) as:

a person who in any capacity for compensation, other than as an employee of another, undertakes, offers to undertake, purports to have the capacity to undertake, or submits a bid to construct, alter, repair, add to, subtract from, improve, move, wreck or demolish any building, highway, road, railroad, structure or excavation associated with a project, development or improvement, or to do any part thereof, including the erection of scaffolding or other structures or works in connection therewith, where the cost of the undertaking is one thousand dollars or more.

Subsequent statutory amendments increased the minimum dollar amount to two thousand five hundred dollars and made non-substantive grammatical changes. *See,* W. Va.Code § 21–11–3(c) (2007).

would defeat the purpose of the contractor licensing acts and encourage unlicensed contractors to do construction work in the state, rather than deter them.

Hunt Country, on the other hand, argues that since the Act imposes a burden or duty upon contractors that did not exist at common law prior to 1991, the Act must be strictly construed by this Court, rather than expanded by the Court to include provisions not placed there by the Legislature. Hunt Country identifies the specific penalties, including criminal penalties, to which the Legislature has made an unlicensed contractor subject, and, as Hunt Country points out, barring an unlicensed contractor from accessing the courts of the state for recovery of performance compensation is not such a penalty. Accordingly, Hunt Country argues that since the Legislature, as a matter of public policy, has not, but could have, barred such access, this Court should not fill that omission by writing into the Act that which the Legislature for whatever reason has not chosen to do.

### C. Discussion

■ We agree with Hunt Country, that it is not the province of this Court to do what the Legislature, in its proper role, could have, but has not done: namely, to bar an unlicensed contractor from accessing the courts of this state to recover performance compensation under a construction contract with a property owner. Conversely, we disagree with the District Court's conclusion in this regard. While Timber Ridge's argument may have merit, it is made in the wrong forum, the judicial branch, rather than the legislative branch, of state government.

Our review of West Virginia law demonstrates to us that the Legislature can and has considered as a matter of public policy whether it should bar an unlicensed person or entity from accessing the state's courts as an additional penalty for not being properly licensed. Specifically, in at least two other statutory sections concerning licensures, the Legislature has specifically barred access to the state's courts as a penalty for being unlicensed. First, in the Real Estate Appraiser Licensing and Certification Act, W. Va.Code §§ 30–38–1, et seq. (2001), which

governs the licensing of real estate appraisers and bars collection of fees by unlicensed appraisers, wherein unlicensed real estate appraisers are statutorily barred from bringing or maintaining an action to recover a fee for services for which a license is required. W.Va.Code § 30–38–16(2001). Specifically, W. Va.Code § 30–38–16 (2001) provides:

> **No person** engaged in the business of real estate appraising in this state or acting in the capacity of a real estate appraiser in this state **may bring or maintain an action in any court of this state to collect compensation for the performance of real estate appraisal services for which a license is required** by this article without alleging and proving that he or she was the holder of a valid real estate appraiser license in this state at all times during the performance of such services.

(Emphasis added.) Similarly, the West Virginia Real Estate License Act, W. Va.Code §§ 30–40–1, et seq. (2002), which governs the licensing of real estate agents, likewise precludes collection actions by unlicensed persons. Such bar is contained in W. Va.Code § 30–40–25 (2002), which provides:

> **No person may bring or maintain any action in any court in this state for the recovery of compensation for the performance of any act or service for which a broker's license is required,** without alleging and proving that he or she was the holder of a valid broker's license at all times during the performance or rendering of any act or service: Provided, That an associate broker or salesperson shall have the right to institute suit in his or her own name for the recovery of compensation from his or her employing broker for acts or services performed while in the employ of said employing broker.

(Emphasis added.) The Legislature therefore can and has specifically utilized the preclusion of the bringing or maintaining of a civil action in the courts of this state as a penalty for an individual or entity not being properly licensed.

In this matter, Timber Ridge would have this Court judicially insert court access penalty provisions, like those quoted above, into

the West Virginia Contractor Licensing Act, W.Va.Code § 21–11–1, *et seq.*, and thus do what the Legislature has heretofore chosen not to do. To do so, we believe, would clearly exceed our mandate as a judicial body. Moreover, were we to do so, we would risk creating precedent for inserting comparable court access penalty provisions into all acts of the Legislature which relate to licensing, including those related to professions, occupations, and businesses—regardless of the fact that such provisions do not now have such penalty provisions.

Should we seek to exceed our proper authority, the potential for mischief by setting bad precedent is readily apparent. For example, suppose that an unlicensed contractor has already received compensation for contract performance in the contractor setting. Should this Court, in the interest of protecting the public, judicially require, when requested, that the compensation be returned regardless of the quality and sum of the work performed? Or, in such a situation, should we judicially impose upon the unlicensed contractor a penalty in some multiple of the amount received? Of course not. We should not seek to impose by judicial order what the Legislature has had the opportunity to do, but has chosen not to do.[5] Thus, we now hold that the West Virginia Contractor Licensing Act, West Virginia Code §§ 21–11–1, *et seq.* (1991), does not bar a contractor who is not properly licensed thereunder from bringing or maintaining an action, including any counterclaim, in any court of this state to recover performance compensation under a construction contract with a property owner. It is the province of the Legislature, not this Court, to impose such a bar.

Having so answered the first certified question in the affirmative, we believe the underlying legal issue which prompted the District Court to issue its January 14, 2008 order is resolved, and that the second ques-

tion is effectively mooted.. We therefore decline to answer the second certified question. *See Calvert v. Scharf,* 217 W.Va. 684, 619 S.E.2d 197 (2005) (The Supreme Court need not answer all of the questions certified to it where it was only necessary to answer one question to resolve the issue in question).

## IV.

### CONCLUSION

Accordingly, for the reasons stated herein, we answer the first certified question in the affirmative. In view of this Court's answer to the first certified question, it is not necessary for the Court to answer the second certified question.

**Certified Question Answered**

Justice ALBRIGHT not participating.

Senior Status Justice MCHUGH sitting by temporary assignment.

---

**5.** The Legislature has already shown that it can expressly attach such penalties to situations involving the lack of proper licensure. For example, in W. Va.Code § 30–39–4(c) (2001), the Legislature has provided that any consideration received by an unregistered athletic agent under an agency contract shall be returned. Further, the Legislature has declared that any unlicensed real estate broker or unlicensed real estate ap-

praiser who has received compensation for acts or services performed for a fee, commission, compensation or profit shall be subject to a penalty of not less than the sum of the compensation received nor more than three times such sum, as may be determined by a court. *See* W. Va.Code § 30–38–15(c) (2001) (real estate appraisers); W. Va.Code § 30–40–22(g) (2002) (real estate brokers).