345 S.E.2d 564

**Sharon L. PAINTIFF, et al.**

v.

**The CITY OF PARKERSBURG, etc., dba Camden Clark Memorial Hospital, et al., and William E. Gilmore.**

**No. 16621.**

Supreme Court of Appeals of West Virginia.

March 25, 1986.

Rehearing Denied July 9, 1986.

■■■■

George E. Lantz, David G. Palmer, Lantz, Rudolph & Palmer, Parkersburg, for appellants.

Diana Everett, Renner, Everett, Bash & Powell, Parkersburg, for City and Bd. of Trustees.

Daniel A. Ruley, Jr., Morris & Ruley, Richard A. Hayhurst, Davis, Bailey, Pfalzgraf & Hall, Parkersburg, for William Gilmore.

NEELY, Justice:

■ The sole issue on this appeal is the extent to which the "locality rule" in medical malpractice cases shall continue to be followed in West Virginia. We find that our own prior cases have so eroded the rule that it is but a shadow of its former self and that medical practice in West Virginia has changed to such an extent that there is no longer any social policy to be served by allowing a vestige of the rule to linger. Therefore, the locality rule in West Virginia medical malpractice cases is abolished.

In September, 1981 Sharon Paintiff contacted William E. Gilmore, M.D. for sterilization surgery. Dr. Gilmore admitted Mrs. Paintiff to the defendant hospital and performed a surgical tubal ligation upon her. Mrs. Paintiff later ascertained that at the time of the surgery she had been pregnant for approximately three to four weeks.

In their complaint Mr. and Mrs. Paintiff alleged that: (1) the doctor was negligent in failing to perform a pregnancy test upon Mrs. Paintiff prior to performing the surgery; and, (2) the hospital was negligent in allowing the doctor to perform the surgery without having conducted appropriate tests. The complaint also alleged that x-ray exposure and medications for pain and infections attendant upon the tubal ligation caused the plaintiffs to suffer anxiety about the health of the fetus, which prompted Mrs. Paintiff to have a therapeutic abortion.

■ The Circuit Court of Wood County granted a directed verdict in favor of the defendant hospital and defendant doctor based upon plaintiffs' failure to produce expert medical testimony from witnesses who had personal knowledge of the appropriate standard of performance of the average surgeon in good standing in the area of Parkersburg, West Virginia in September, 1981. The plaintiffs attempted to prove their case by the testimony of Dr. Carl E. Nichols, an obstetrician-gynecologist, licensed to practice in West Virginia since 1969. Dr. Nichols testified that he had done several tubal ligations and that he was familiar with the accepted standards of medical practice for doing tubal ligations. Nonetheless, the circuit court held his testimony was inadmissible because he was unable to testify concerning the accepted, customary and usual medical practice and procedure among *general surgeons* in good standing in Parkersburg, West Virginia in 1981.

Similarly, Alfred Prieto, M.D., an obstetrician-gynecologist, practicing in Parkersburg for nine years was called. Dr. Prieto testified that he had done hundreds of tubal ligation surgeries. When asked: "Doctor, are you familiar with the usual and customary medical practice and procedure for doctors of approved standing performing tubal ligations in the area of Parkersburg, West Virginia, in September, 1981, with regard to performing that surgery?", the trial court disallowed the question on the grounds that the doctor was required to testify about what the standard was for an average general surgeon. Plaintiff's trial counsel made several efforts to rephrase the question, but the witness was eventually excused when it became obvious that the doctor could not testify that he had knowledge concerning customary, standard practice for *general surgeons* in the area of Parkersburg doing tubal ligation surgery.

Both Dr. Nichols and Dr. Prieto demonstrated that they were aware of the generally accepted, standard procedures for doing tubal ligation surgery, and that they were willing to testify that a test for preg-

nancy would be a precondition for doing the surgery in any woman of child-bearing age. Surely, their testimony would have been relevant and competent. The trial court should not have excluded their testimony either because they were not general surgeons or because they were unfamiliar with the peculiarities of surgical practice in Parkersburg.

As long ago as 1967 this Court effectively emasculated the "locality rule" in the case of *Hundley v. Martinez*, 151 W.Va. 977, 158 S.E.2d 159 (1967) in which Justice Caplan explained:

The remaining question to be resolved on this appeal is whether or not the testimony of Doctor Walter R. Loewe, an ophthalmologist of New York City, is admissible. It is the contention of the defendant that Doctor Loewe, never having practiced his profession in Charleston, West Virginia, was not familiar with the standard of medical care in that city, and was not, therefore, qualified to express an opinion concerning the alleged negligence of the defendant. So held the Circuit Court of Kanawha County in ruling that Doctor Loewe's testimony would be inadmissible upon the retrial of this case.

To be considered here is the applicability of the "locality" rule as it pertains to the testimony of a physician in a medical malpractice case. Under the strict and narrow version of this rule, the competence of an expert medical witness to testify about standard of care is determined by his familiarity with the care ordinarily exercised in the same locality in which the defendant practiced....

In 1880, when the *Small* case was decided, there was perhaps sound reason for the "locality" rule. Doctors living and practicing in rural areas could not be expected to possess the same degree of medical knowledge as did their urban counterparts. This situation has changed materially, however, it being apparent that the doctor in the rural area now has available to him most of the same facilities as does the practitioner in the city. Due to highly improved modes of transportation, most physicians have at their disposal adequate to excellent hospital facilities. In addition, the now ready means of communication has permitted the doctor, regardless of his location, to keep abreast of recent medical developments and practices. Through the media of medical journals and associations many physicians studiously pursue postgraduate medical education.

In view of these obvious transformations in today's society, the reasons for the strict application of the "locality" rule have largely disappeared. The rule has lost much of its significance, as evidenced by the following expression of the court in *Gist v. French*, 136 Cal. App.2d 247, 288 P.2d 1003: "Today the discoveries of insulin, iron, quinine, strichnine or the antibiotics is instantly heralded throughout the civilized world and as speedily communicated are the methods of administering them and the symptoms for which they are to be applied. Every great hospital in the land maintains systems for preserving statistical information relative to the treatment of diseases and injuries, much of which is published to the medical world in attractive journals, whereby practitioners are equipped immediately to utilize the new remedies. The same is true with respect to all new methods and devices of the surgical art. The ubiquity of such knowledge, the popularity of ethical standards in every part of the nation and the uniformity of curricula in medical schools have combined to create one community of medical practitioners out of the 48 states and the District of Columbia. Surely, a surgeon in San Luis Obispo has acquired practically the same knowledge of surgery that is practiced in both San Francisco and Los Angles." [sic] [Citations omitted]

The significance of the degree with which the "locality" rule should be applied becomes apparent in view of the universally accepted principle that in medical malpractice cases negligence or want of professional skill can be proved only by expert witnesses. [Citations omitted]. Such expert testimony frequently is not readily available. As stat-

ed in Prosser, Torts (2nd ed. 1955), Sec. 31, "The well known reluctance of doctors to testify against one another, which has been mentioned now and then in the decisions, may make this [expert medical testimony] difficult or impossible to obtain." Therefore, if a plaintiff in a malpractice action is not permitted to obtain expert testimony of a physician who practices outside the domain of the defendant doctor, he may be denied completely the opportunity of proving the negligent acts of which he complains.

151 W.Va. at 984–992, 158 S.E.2d at 166–168.

Our explicit overruling of the locality rule today was presaged in the case of *Thornton v. CAMC*, 172 W.Va. 360, 305 S.E.2d 316 (1983) in which the plaintiff assigned as error several defense instructions on the medical standard of care which contained the phrase "in accord with reasonable care and diligence as practiced by accredited physicians and surgeons in a locality similar to that in which defendant Pushkin's services were rendered." In that case, Justice Miller pointed out that we had "virtually abandoned" the locality rule in *Hundley, supra,* and that we had entirely abolished the locality rule for nursing malpractice in *Duling v. Bluefield Sanitarium, Inc.,* 149 W.Va. 567, 142 S.E.2d 754 (1965). However, in *Thornton,* Justice Miller avoided a full discussion of the locality issue because plaintiffs' attorney had not objected to the locality rule language in the defense instructions.

Much has been written about the obsolescence of the locality rule. We have nothing to add to the oceans of ink and forests of paper that have been pressed into service to hasten the rule's demise. We will only add that the locality rule is abolished in West Virginia, and we shall not miss it. Accordingly, the judgment of the circuit court is reversed and the case is remanded to the circuit court for a new trial.

Reversed and remanded.