Javier **VERGARA**, a minor, by his Parents and Natural Guardians, Jose **VERGARA** and Concepcion Vergara, Appellants (Plaintiffs Below),

v.

John **DOAN**, M.D., Appellee (Defendant Below).

No. 90S04–9206–CV–436.

Supreme Court of Indiana.

June 8, 1992.

Ronald E. James, Benson, Pantello, Morris & James, Fort Wayne, for appellants.

John F. Lyons, John M. Clifton, Barrett & McNagny, Fort Wayne, for appellee.

ON CIVIL PETITION TO TRANSFER

SHEPARD, Chief Justice.

Javier Vergara was born on May 31, 1979, at the Adams Memorial Hospital in Decatur, Indiana. His parents, Jose and Concepcion, claimed that negligence on the part of Dr. John Doan during Javier's delivery caused him severe and permanent injuries. A jury returned a verdict for Dr. Doan and the plaintiffs appealed. The Court of Appeals affirmed. *Vergara v. Doan*, 577 N.E.2d 627 (Ind.App.1991). Plaintiffs seek transfer, asking us to abandon Indiana's modified locality rule. We grant transfer to examine the standard of care appropriate for medical malpractice cases.

■ In most negligence cases, the defendant's conduct is tested against the hypothetical reasonable and prudent person acting under the same or similar circumstances. *Miller v. Griesel* (1974), 261 Ind. 604, 308 N.E.2d 701. In medical malpractice cases, however, Indiana has applied a more specific articulation of this standard. It has become known as the modified locality rule: "The standard of care ... is that degree of care, skill, and proficiency which is commonly exercised by ordinarily careful, skillful, and prudent [physicians], at the time of the operation and *in similar localities*." *Burke v. Capello* (1988), Ind., 520 N.E.2d 439, 441 (emphasis added). Appellants have urged us to abandon this standard, arguing that the reasons for the modified locality rule are no longer applicable in today's society. We agree.

The modified locality rule is a less stringent version of the strict locality rule, which measured the defendant's conduct against that of other doctors in the same community. When the strict locality rule originated in the late 19th century, there was great disparity between the medical opportunities, equipment, facilities, and training in rural and urban communities. Travel and communication between rural and urban communities were difficult. The locality rule was intended to prevent the inequity that would result from holding rural doctors to the same standards as doctors in large cities. *Wilson v. Sligar* (1987), Ind.App., 516 N.E.2d 1099, 1101; *see also* John Kimbrough Johnson, Jr., *An Evaluation in the Medical Standard of Care*, 23 Vand.L.Rev. 729, 731–32 (1970).

With advances in communication, travel, and medical education, the disparity between rural and urban health care diminished and justification for the locality rule waned. The strict locality rule also had two major drawbacks, especially as applied to smaller communities. First, there was a scarcity of local doctors to serve as expert witnesses against other local doctors. Second, there was the possibility that practices among a small group of doctors would establish a local standard of care below that which the law required. *Pederson v. Dumouchel*, 72 Wash.2d 73, 431 P.2d 973, 977 (1967). In response to these changes and criticisms, many courts adopted a modified locality rule, expanding the area of comparison to similar localities. This is the standard applied in Indiana. *Wilson v. Sligar*, 516 N.E.2d 1099; *Gramm v. Boener* (1877), 56 Ind. 497 (recognizing the modified locality rule).

Use of a modified locality rule has not quelled the criticism. *See* Jon R. Waltz, *The Rise and Gradual Fall of the Locality Rule in Medical Malpractice Litigation*, 18 DePaul L.Rev. 408 (1969) (predicting eventual disappearance of locality rule); Brent R. Cohen, *The Locality Rule in Colorado: Updating the Standard of Care*, 51 U.Colo.L.Rev. 587 (1980) (urging a standard based on medical resources available to the doctor under the circumstances in which patient was treated). Many of the

common criticisms seem valid. The modified locality rule still permits a lower standard of care to be exercised in smaller communities because other similar communities are likely to have the same care. *Shilkret v. Annapolis Emergency Hosp.*, 276 Md. 187, 349 A.2d 245 (1975). We also spend time and money on the difficulty of defining what is a similar community. *Cf. Id.* The rule also seems inconsistent with the reality of modern medical practice. The disparity between small town and urban medicine continues to lessen with advances in communication, transportation, and education. In addition, widespread insurance coverage has provided patients with more choice of doctors and hospitals by reducing the financial constraints on the consumer in selecting caregivers. These reasons and others have led our Court of Appeals to observe that the modified locality rule has fallen into disfavor. *See Wilson v. Sligar*, 516 N.E.2d at 1101 n. 2; *Joy v. Chau* (1978), 177 Ind.App. 29, 36, 377 N.E.2d 670, 675 n. 1. Many states describe the care a physician owes without emphasizing the locality of practice.[1] Today we join these states and adopt the following: a physician must exercise that degree of care, skill, and proficiency exercised by reasonably careful, skillful, and prudent practitioners in the same class to which he belongs, acting under the same or similar circumstances. Rather than focusing on different standards for different communities, this standard uses locality as but one of the factors to be considered in determining whether the doctor acted reasonably. Other relevant considerations would include advances in the profession, availability of facilities, and whether the doctor is a specialist or general practitioner. *See Shilkret*, 349 A.2d at 253.

We now turn to whether the instruction given at trial, legally correct at the time, requires a reversal in light of our decision today. Appellant urges us to remand for a new trial, claiming that the jury instructions overemphasized the same or similar locality. We analyze this contention by reference to the appellate standard for erroneous instructions. We assume that the erroneous instruction influenced the verdict and will reverse for such error, unless it appears from the evidence that the verdict could not have differed even with a proper instruction. *Canfield v. Sandock* (1990), Ind., 563 N.E.2d 1279.

The court gave the following instructions regarding the standard of care:

Court's additional instruction 23:

"I instruct you that the degree of skill and care required of a general practice physician who is employed prior to and during May, 1979 is that degree of skill and knowledge which ordinarily was possessed by general practice physicians who devote attention to obstetrics and its treatment in Decatur and similar localities of similar size in 1979.

Therefore, in determining whether or not John Doan, M.D. exercised due care in treating and delivering the child of Concepcion Vergara during the period in question, you may consider his background, training and the care and skill required of general practice physicians rendering similar care under similar circumstances in areas similar in size to the area of Decatur, Indiana or similar localities in 1979." Record at 760.

Court's additional instruction 26:

1. *See Bates v. Meyer*, 565 So.2d 134 (Ala.1990); *Mann v. Cracchiolo*, 38 Cal.3d 18, 210 Cal.Rptr. 762, 694 P.2d 1134 (1985); *Hyles v. Cockrill*, 169 Ga.App. 132, 312 S.E.2d 124 (1983); *Speed v. State*, 240 N.W.2d 901 (Iowa 1976); *Blair v. Eblen*, 461 S.W.2d 370 (Ky.1970); *Shilkret v. Annapolis Emergency Hosp.*, 276 Md. 187, 349 A.2d 245 (1975); *Brune v. Belinkoff*, 354 Mass. 102, 235 N.E.2d 793 (1968); *Hall v. Hilbun*, 466 So.2d 856 (Miss.1985); *Schueler v. Strelinger*, 43 N.J. 330, 204 A.2d 577 (1964); *Wiggins v. Piver*, 276 N.C. 134, 171 S.E.2d 393 (1970); *Pharma-*

*seal Lab., Inc., v. Goffe*, 90 N.M. 753, 568 P.2d 589 (1977); *King v. Williams*, 279 S.E.2d 618 (S.C.1981); *Peterson v. Shields*, 652 S.W.2d 929 (Tx.1983); *Farrow v. Health Services Corp.*, 604 P.2d 474 (Utah 1979); *Brown v. Koulizakis*, 229 Va. 524, 331 S.E.2d 440 (1985); *Paintiff v. Parkersburg*, 176 W.Va. 469, 345 S.E.2d 564 (1986); *Pederson v. Dumouchel*, 72 Wash.2d 73, 431 P.2d 973 (1967); *Shier v. Freedman*, 58 Wis.2d 269, 206 N.W.2d 166 (1973), modified on other grounds and rehearing denied, 58 Wis.2d 269, 208 N.W.2d 328.

"If you find from the testimony of the experts, by a preponderance of the evidence, that certain minimum standards of care, uniform throughout the country, existed for a particular practice then you may judge the doctor's conduct by that minimum standard of care for the particular practice." Record at 763.

Although our holding that the modified locality rule no longer applies makes instruction 23 erroneous, the standard we have adopted today hardly prohibits consideration of the locality of practice. Locality of practice remains a proper subject for evidence and argument because it may be relevant to the circumstances in which the doctor acted.

Moreover, although instruction 23 mentions Decatur or similar localities, instruction 26 refers to a national standard of care. Plaintiff was permitted to present his expert witness, Dr. Harlan Giles, even though he was from Pittsburgh, Pennsylvania (not Decatur or a similar locality). Dr. Giles testified regarding his experience and knowledge of the standard of care in communities similar to Decatur and in hospitals similar in size to Adams County Memorial Hospital. He testified that in his opinion, considering all the factors incident to the pregnancy and birth of Javier Vergara, the standard of care required Dr. Doan to have delivered the baby by cesarean section. He stated that this opinion was based on the standard of care as it existed in 1979 in Decatur or similar communities. He also testified that the failure to have either an anesthesiologist or a qualified nurse anesthetist present at the delivery was a breach of the national standard of care for hospitals the size of Adams County Memorial and smaller. Evidently the jury disagreed with Dr. Giles and found Dr. Doan's conduct reasonable under the circumstances.

We regard our new formulation of a doctor's duty as a relatively modest alteration of existing law. It is unlikely to have changed the way this case was tried. We are satisfied that an instruction without the locality language would not lead a new jury to a different conclusion.

Therefore, we hold that giving instruction 23 was harmless and does not require reversal. In a different factual situation, however, an erroneous instruction with the locality language present might well constitute reversible error.[2] The standard that we set out today, without the locality language, should be used from today forward.

We affirm the judgment of the trial court.

DeBRULER, DICKSON and KRAHULIK, JJ., concur.

GIVAN, J., concurs in result with separate opinion.

GIVAN, Justice, concurring in result.

Although the majority opinion states that it is abandoning the modified locality rule, they claim the rule now to be that the physician must exercise the care and skill of practitioners in the same class to which he belongs and "acting in the same or similar circumstances." They go on to state that "[o]ther relevant considerations would include advances in the profession, availability of facilities, and whether the doctor is a specialist or general practitioner."

I do not perceive this "new standard" to differ materially from the modified locality rule. The ability of a physician to perform may well be vastly different in a small rural community hospital than that same physician might be able to perform in a large well-equipped metropolitan hospital.

I believe the majority has articulated a distinction without a difference. I would not confuse the issue by purporting to do away with the modified locality rule.

---

2. *Compare, Canfield,* 563 N.E.2d 1279 (error of instructing jury that it could consider loss of enjoyment of life as a separate element of damages was harmless) and *Marks v. Gaskill* (1990), Ind., 563 N.E.2d 1284 (giving similar erroneous instruction regarding loss of enjoyment of life was reversible error).