# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

**September 2013 Term**

**FILED**

**October 3, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 12-0991

**ROBERT BURNWORTH,**
**Plaintiff Below, Petitioner**

**V.**

**KENT GEORGE;**
**ROBINSON & MCELWEE, PLLC; AND**
**JOHN T. POFFENBARGER,**
**Defendants Below, Respondents**

---

**Appeal from the Circuit Court of Kanawha County**
**Honorable Robert G. Chafin, Special Judge**
**Civil Action No. 11-C-1851**

**AFFIRMED**

---

**Submitted: September 24, 2013**
**Filed: October 3, 2013**

William W. Pepper
Andrew S. Nason
Pepper & Nason
Charleston, West Virginia
Attorneys for the Petitioner

Michael J. Farrell
Charlotte Hoffman Norris
Farrell, White, & Legg PLLC
Huntingon, West Virginia
Attorneys for the Respondents,
Kent George and
Robinson & McElwee, PLLC

Guy R. Bucci
Bucci, Bailey & Javins, L.C.
Charleston, West Virginia
Attorney for the Respondent,
John T. Poffenbarger

The Opinion of the Court was delivered PER CURIAM.

CHIEF JUSTICE BENJAMIN, disqualified.

JUDGE ALAN D. MOATS, sitting by temporary assignment.

**SYLLABUS BY THE COURT**

1.      "Summary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove."  Syllabus point 2, *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 459 S.E.2d 329 (1995).

2.      "Generally, in a suit against an attorney for negligence, the plaintiff must prove three things in order to recover: (1) the attorney's employment; (2) his/her neglect of a reasonable duty; and (3) that such negligence resulted in and was the proximate cause of loss to the plaintiff."  Syllabus point 1, *Calvert v. Scharf*, 217 W. Va. 684, 619 S.E.2d 197 (2005).

3.      "'In an attorney malpractice action, proof of the attorney's negligence alone is insufficient to warrant recovery; it must also appear that the client's damages are the direct and proximate result of such negligence.'  Syllabus point 2, *Keister v. Talbott*, 182 W. Va. 745, 391 S.E.2d 895 (1990)."  Syllabus point 3, *Calvert v. Scharf*, 217 W. Va. 684, 619 S.E.2d 197 (2005).

4.      "'Damages arising from the negligence of an attorney are not presumed, and a plaintiff in a malpractice action has the burden of proving both his loss and its causal connection to the attorney's negligence.'  Syllabus point 3, *Keister v. Talbott*, 182 W. Va. 745, 391 S.E.2d 895 (1990)."  Syllabus point 4, *Calvert v. Scharf*, 217 W. Va. 684, 619 S.E.2d 197 (2005).

5.      "Judicial estoppel bars a party from re-litigating an issue when: (1) the party assumed a position on the issue that is clearly inconsistent with a position taken in a previous case, or with a position taken earlier in the same case; (2) the positions were taken in proceedings involving the same adverse party; (3) the party taking the inconsistent positions received some benefit from his/her original position; and (4) the original position misled the adverse party so that allowing the estopped party to change his/her position would injuriously affect the adverse party and the integrity of the judicial process."  Syllabus point 2, *West Virginia Department of Transportation, Division of Highways v. Robertson*, 217 W. Va. 497, 618 S.E.2d 506 (2005).

**Per Curiam:**

The petitioner herein and plaintiff below, Robert L. Burnworth ("Mr. Burnworth"), appeals from orders entered July 23, 2012, and August 10, 2012, by the Circuit Court of Kanawha County. By the July 23, 2012, order, the circuit court found that Mr. Burnworth was not entitled to judgment as a matter of law on his claim of legal malpractice against the respondents herein and defendants below, Kent George ("Mr. George"), Robinson & McElwee, PLLC ("RAM"), and John T. Poffenbarger ("Mr. Poffenbarger"),[1] and awarded summary judgment to the defendants. Thereafter, by order entered August 10, 2012, the circuit court denied Mr. Burnworth's motion for relief from its earlier summary judgment order. Before this Court, Mr. Burnworth challenges these rulings. Upon our review of the parties' arguments, the appendix record, and the pertinent authorities, we affirm the circuit court's decisions. In summary, we find that Mr. Burnworth failed to prove that the respondents' alleged professional negligence caused him to sustain any purported damages. We further conclude that the circuit court correctly denied Mr. Burnworth's request for relief from its summary judgment ruling.

---

[1]Mr. George, RAM, and Mr. Poffenbarger also will be referred to collectively as "the defendants," with respect to the circuit court proceedings, and as "the respondents," in the context of the instant proceeding before this Court.

1

# I.

## FACTUAL AND PROCEDURAL HISTORY

The facts giving rise to the instant proceeding are as follows. In October 2000, Mr. Burnworth retained Mr. George and RAM to represent him and his company, Access Documents Systems, Incorporated ("Access Documents"), in a transaction to sell his controlling interest in Access Documents and to transfer the company's control to his friend and stockbroker, Robert Jones ("Mr. Jones"). During the course of this undertaking, a new corporation, ADSC Holding Company ("ADSC"), was formed to receive Mr. Burnworth's controlling interest in Access Documents. Mr. Jones's wife, Jane Colby Jones ("Mrs. Jones"), was the primary shareholder of ADSC. As part of the consideration they would give to Mr. Burnworth for the transfer of his Access Documents shares to ADSC, the Joneses agreed to pay Mr. Burnworth a certain sum of money, and ADSC would provide a promissory note for the remaining balance owed of $1,479,984.[2] The parties contemplated that ADSC's promissory note would be secured by (1) two second priority liens[3] on property owned by the Joneses and (2) personal guaranties by the Joneses. Mr. Poffenbarger, the Joneses' attorney, drafted the two second priority deed of trust instruments while Mr. George and RAM prepared all of the other paperwork necessary to effectuate the transaction. The

_____

[2]In addition to this monetary consideration, Mr. Burnworth also was to receive an employment contract with Access Documents and shares in ADSC.

[3]The banking institutions providing the money for the Joneses' sum certain payment to Mr. Burnworth received first priority liens on the referenced properties.

Joneses did not disclose which properties would be securing ADSC's promissory note or present the two deeds of trust to Mr. Burnworth for his review prior to the transaction's closing on August 1, 2001.

At closing, Mr. Burnworth learned for the first time that the properties securing the promissory note would be one property owned by the Joneses (instead of two, as originally contemplated) and one property owned by Colby Corporation ("Colby"), a company wholly owned by Mrs. Jones. Although both deeds of trust contained general warranties of title, Mr. George advised Mr. Burnworth to postpone closing to permit further review of the documents. However, Mr. Burnworth elected to proceed with closing. On August 2, 2001, RAM recorded both of the second priority deeds of trust. It is undisputed that Mr. George and RAM did not have an opportunity to search the title of either of the properties securing the transaction because they were not disclosed until the time of closing; Mr. Poffenbarger also did not conduct a title search of these properties.

Thereafter, on July 2, 2002, Mr. Burnworth executed a "Release of Deed of Trust" to release the second priority deed of trust on the Joneses' property that provided security for ADSC's promissory note. Neither Mr. George nor RAM were informed of this release. Following this release, the promissory note was secured by the remaining security,

3

*i.e.*, the Joneses' personal guaranties and the second priority deed of trust on Colby's property.

In August 2006, Mr. Burnworth contacted Mr. George; informed him that ADSC and the Joneses had defaulted under the promissory note; and requested him to send a default letter to ADSC and the Joneses. While preparing this correspondence, RAM conducted a preliminary title search to ensure that the deeds of trust had not been released and that their priority status had not changed. During the course of the title search, Mr. George and RAM learned for the first time that Mr. Burnworth had released the deed of trust on the Joneses' property and that the deed of trust on Colby's property was defective.[4] Although the parties dispute whether Mr. George informed Mr. Burnworth that the Colby property's deed of trust was defective, it is apparent that Mr. Burnworth ended his relationship with Mr. George and RAM shortly after this legal work was performed.

In 2009, ADSC again defaulted under the promissory note. Mr. Burnworth retained new counsel, William Pepper ("Mr. Pepper"), in March 2009 to begin collection efforts under the promissory note and against the security therefor. Mr. Pepper, through

---

[4]The Colby property's deed of trust was defective because Colby did not own, and had never owned, the property it pledged as collateral for the promissory note, which security was memorialized by the defective deed of trust. Rather, it appears that the Joneses owned the property that they represented at closing was owned by Colby.

4

another attorney, conducted a title search of the deeds of trust securing ADSC's promissory note and found them both to be defective. In December 2009, Mr. Pepper sent a letter to RAM alleging that RAM was liable to Mr. Burnworth for the defective deeds of trust. RAM denied liability.

Thereafter, on October 14, 2011, Mr. Burnworth, by attorneys James Lees and Kathy Brown, filed the instant legal malpractice action against Mr. George, RAM, and Mr. Poffenbarger alleging that they are liable to him for the failed collateral securing ADSC's promissory note, particularly the defective deed of trust on Colby's property. Specifically, Mr. Burnworth alleges that the defendants failed to discover the defects in Colby's deed of trust because they did not conduct a title search of the subject property prior to closing. At the time Mr. Burnworth filed this lawsuit, he had not taken any formal action against ADSC for its default under the promissory note, against the Joneses under their personal guaranties, or against Colby Corporation under its general warranty of title contained in the deed of trust on its property.

On November 14, 2011, Mr. Burnworth, by Mr. Pepper, filed litigation against ADSC and the Joneses to recover the remaining balance due under ADSC's promissory

5

note.[5]  Unaware of this litigation, Mr. George and RAM answered and moved to dismiss Mr. Burnworth's complaint, denying liability; Mr. Poffenbarger also moved to dismiss Mr. Burnworth's complaint.  The defendants first learned of Mr. Burnworth's collection action during a March 3, 2012, hearing on their motions to dismiss.  The defendants moved to consolidate Mr. Burnworth's legal malpractice and collection actions, but Mr. Burnworth opposed said motion because he anticipated a forthcoming settlement and dismissal of his collection action.  By order entered April 19, 2012, the Circuit Court of Kanawha County[6] entered a "Stipulation of Settlement and Order of Dismissal" in Mr. Burnworth's collection action.  In short, through the stipulated settlement, Mr. Burnworth obtained a judgment against ADSC and the Joneses, individually and jointly, for $725,715.28, plus interest.[7]  Furthermore, the stipulated settlement expressly provided that

> [t]he entry of judgment in favor of the plaintiff [Mr. Burnworth] pursuant to this Stipulation of Settlement and Order of Dismissal shall operate to extinguish all obligations of all the defendants [ADSC, Mr. Jones, and Mrs. Jones] under the [Promissory] Note, and any security instrument given to secure

---

[5]Although neither ADSC nor the Joneses answered Mr. Burnworth's collection action complaint, it does not appear that he sought a ruling of default or the entry of a default judgment against them.  Moreover, Mr. Burnworth did not name Colby Corporation as a defendant to this collection action even though Colby allegedly owned the property securing the remaining deed of trust.

[6]Mr. Burnworth's legal malpractice action and his collection action were assigned to two different judges of the Circuit Court of Kanawha County.

[7]The remaining balance due under the original promissory note was $746,925.98.

the same, and the subject [Promissory] Note is cancelled and merged into the judgment.

The defendants then moved for summary judgment arguing that the "Stipulation of Settlement and Order of Dismissal," by extinguishing the parties' obligations under the promissory note and cancelling the same, effectively renders moot Mr. Burnworth's legal malpractice claim against them seeking damages occasioned by the defective, but now extinguished, deed of trust on Colby's property. Mr. Burnworth opposed summary judgment, contending that Mr. Pepper had advised him that the stipulated settlement was not collectible from ADSC or the Joneses. It does not appear from the record, however, that Mr. Burnworth had attempted to execute upon the judgment provided by the stipulated settlement. On May 23, 2012, the circuit court held a hearing and awarded summary judgment to Mr. George, RAM, and Mr. Poffenbarger. The circuit court determined that Mr. Burnworth had failed to prove that he had sustained damages as a result of the defendants' alleged professional negligence, which is an essential element of a claim for legal malpractice, because the stipulated settlement extinguished the defective Colby deed of trust upon which Mr. Burnworth had based his claim for damages. The court entered its order granting summary judgment to the defendants on July 23, 2012.

The day after the summary judgment hearing in his legal malpractice action, the circuit judge in the collection suit entered a "Corrected Stipulation of Settlement and

7

Order of Dismissal" in Mr. Burnworth's collection action. The corrected order omitted the above-quoted language extinguishing and cancelling the prior obligations of ADSC and the Joneses and indicated that it was entered *nunc pro tunc* to replace the court's April 19, 2012, order and to be rendered effective on that date. Following the entry of this order, Mr. Burnworth moved for relief from the summary judgment ruling in his legal malpractice action based upon the fact that the corrected stipulated settlement did not extinguish the promissory note and defective deed of trust providing a security interest in Colby's property. By order entered August 10, 2012, the circuit court denied Mr. Burnworth's request for relief, explaining that it had based its summary judgment ruling not upon the circuit court's order in the collection action but upon the terms of the settlement reached by the parties therein. Because Mr. Burnworth had agreed to the cancellation and extinguishment of the promissory note and defective Colby deed of trust, the circuit court found that he could not prove that he had sustained damages as a result of such defect. From the circuit court's orders, Mr. Burnworth now appeals to this Court.

## II.

### STANDARD OF REVIEW

The orders from which Mr. Burnworth appeals involve an award of summary judgment to the respondents and a denial of Mr. Burnworth's request for relief therefrom. Our review of the lower court's summary judgment order will be plenary, while we review

8

its order denying further relief for an abuse of discretion.  *See* Syl. pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994) ("A circuit court's entry of summary judgment is reviewed *de novo*.").  *See also* Syl. pt. 5, *Toler v. Shelton*, 157 W. Va. 778, 204 S.E.2d 85 (1974) ("A motion to vacate a judgment made pursuant to Rule 60(b), W. Va. R. C. P., is addressed to the sound discretion of the court and the court's ruling on such motion will not be disturbed on appeal unless there is a showing of an abuse of such discretion.").

## III.

## DISCUSSION

On appeal to this Court, Mr. Burnworth challenges both the circuit court's order awarding summary judgment to the respondents and the circuit court's order denying him relief from that ruling.  We will consider each of these orders in turn.

### A.  Summary Judgment

To determine whether the circuit court properly awarded summary judgment to the respondents, we must consider when an award of summary judgment is warranted in a given case.  We previously have held that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law."  Syl. pt. 3, *Aetna*

9

*Cas. & Sur. Co. v. Federal Ins. Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770 (1963).

Moreover,

> [s]ummary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

Syl. pt. 2, *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 459 S.E.2d 329 (1995).

In his lawsuit against the respondents, Mr. Burnworth asserted claims for legal malpractice alleging that the respondent attorneys were negligent in representing him in his sale of Access Documents to ADSC and, more specifically, in preparing the corresponding documents providing financing and security interests for the transaction. "Generally, in a suit against an attorney for negligence, the plaintiff must prove three things in order to recover: (1) the attorney's employment; (2) his/her neglect of a reasonable duty; and (3) that such negligence resulted in and was the proximate cause of loss to the plaintiff." Syl. pt. 1, *Calvert v. Scharf*, 217 W. Va. 684, 619 S.E.2d 197 (2005). To prevail upon a claim asserting legal malpractice, it is essential that the alleged attorney negligence has caused the damages the plaintiff seeks to recover: "'In an attorney malpractice action, proof of the attorney's negligence alone is insufficient to warrant recovery; it must also appear that the client's damages are the direct and proximate result of such negligence.' Syllabus point 2, *Keister v. Talbott*, 182 W. Va. 745, 391 S.E.2d 895 (1990)." Syl. pt. 3, *Calvert*, 217 W. Va. 684, 619

10

S.E.2d 197. Furthermore, we have held that "'[d]amages arising from the negligence of an attorney are not presumed, and a plaintiff in a malpractice action has the burden of proving both his loss and its causal connection to the attorney's negligence.' Syllabus point 3, *Keister v. Talbott*, 182 W. Va. 745, 391 S.E.2d 895 (1990)." Syl. pt. 4, *Calvert*, 217 W. Va. 684, 619 S.E.2d 197.

Upon a review of the record before us in the case *sub judice*, we agree with the circuit court's determination that Mr. Burnworth has failed to prove an essential element of his claim for legal malpractice, namely that he has sustained damages and that those damages were caused by the respondents' professional negligence. *See* Syl. pts. 1 & 4, *Calvert*, 217 W. Va. 684, 619 S.E.2d 197. Mr. Burnworth's primary contention against the respondents is that they are responsible for the defective deed of trust on property purportedly owned by Colby and for failing to conduct a title search prior to closing to discover this defect. When the transaction to sell Access Documents to ADSC was consummated on August 1, 2001, Mr. Burnworth had four sources of recourse if ADSC defaulted on its promissory note: (1) a secured interest provided by a deed of trust encumbering a parcel of property owned by the Joneses; (2) a secured interest provided by a deed of trust encumbering a parcel of property allegedly owned by Colby; (3) the individual guaranty of Mr. Jones; and (4) the individual

11

guaranty of Mrs. Jones.[8] Mr. Burnworth and his counsel first learned at closing which properties would be pledged as security, and their first opportunity to inspect the deeds of trust referencing these documents also occurred at closing. Despite Mr. George's recommendation to postpone closing to permit closer inspection of these documents, Mr. Burnworth insisted on proceeding with closing on that date. Therefore, neither Mr. Burnworth nor his counsel had an opportunity to conduct a title search of the subject properties prior to closing, which search would have revealed the defects in title at a time when they could have been remedied or otherwise addressed. Insofar as Mr. Burnworth disregarded the advice of his counsel to delay closing in order to more closely examine the two deed of trust documents, Mr. Burnworth cannot now complain that he sustained damages from his counsel's failure to conduct a title search prior to closing when he, himself, refused to delay closing to permit his counsel to do so.

We also find disingenuous Mr. Burnworth's contention that he has sustained damages as a result of the defective Colby deed of trust when he, himself, has failed to enforce the very instrument he claims has caused him injury. Approximately one year after closing, Mr. Burnworth, of his own accord and without consulting with his counsel, released the deed of trust securing the Joneses' property. Thus, after this release, Mr. Burnworth was

---

[8]Arguably, Mr. Burnworth also had two additional avenues of recourse, as well: the general warranty of title contained in each of the two deeds of trust.

12

left with only three avenues of recourse should ADSC default on its promissory note: (1) a secured interest provided by a deed of trust encumbering a parcel of property allegedly owned by Colby; (2) the individual guaranty of Mr. Jones; and (3) the individual guaranty of Mrs. Jones.

In August 2006, Mr. Burnworth realized that ADSC and the Joneses had defaulted under the promissory note. Although he requested Mr. George and RAM to prepare and send a letter of default, it does not appear that Mr. Burnworth instituted a collection action at that time or sought recourse from the remaining three sources of security. In 2009, ADSC and the Joneses again defaulted under the promissory note. Mr. Burnworth, through new counsel, once more informed the debtors of their default, but, again, it does not appear that Mr. Burnworth commenced formal collection proceedings at that time or sought to enforce the parties' earlier agreement pledging Colby's property and the Joneses' individual guaranties as collateral for the transaction. Only after Mr. Burnworth filed the instant legal malpractice action against the respondents did he file a collection action against ADSC and the Joneses. Despite the failure of ADSC and the Joneses to answer his complaint, Mr. Burnworth did not seek a ruling of default and the entry of a default judgment. Rather, Mr. Burnworth negotiated a stipulated settlement with ADSC and the Joneses, through which he agreed to accept an amount less than the balance due under the

13

promissory note[9] but still did not attempt to recover upon the security that ADSC and the Joneses had provided to him at closing. Instead of enforcing the Colby property's deed of trust or seeking recovery through the personal guaranties of the Joneses, Mr. Burnworth agreed to accept a judgment for an amount less than the remaining monies due under the promissory note and acquiesced to the cancellation and extinguishment of the promissory note and all collateral that had been pledged as security therefor, including the defective Colby deed of trust. Finally, at the time of the circuit court's summary judgment ruling, it does not appear that Mr. Burnworth had yet attempted to execute upon the judgment memorialized by the stipulated settlement. Insofar as he essentially has forgiven all of the collateral initially pledged as security for the promissory note, including the Colby deed of trust, by accepting a judgment in its stead, Mr. Burnworth has not established that he has sustained damages as a result of the defective deed of trust. Without proof of damages, Mr. Burnworth also cannot show that the respondents' actions caused him harm. And, without proof of both damages and the respondents' liability therefor, Mr. Burnworth cannot prevail upon his claim of legal malpractice. *See* Syl. pts. 1 & 4, *Calvert v. Scharf*, 217 W. Va. 684, 619 S.E.2d 197. Because Mr. Burnworth failed to prove an essential element of his legal malpractice claim, the circuit court correctly granted the respondents' motion for summary judgment. *See* Syl. pt. 2, *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 459 S.E.2d 329. Accordingly, the circuit court's July 23, 2012, order is affirmed.

---

[9]*See supra* note 7 and accompanying text.

14

*B. Motion for Relief from Circuit Court's Summary Judgment Order*

We further find that the circuit court correctly denied Mr. Burnworth's request for relief from its summary judgment ruling and conclude that Mr. Burnworth is judicially estopped from relying upon the amended stipulated settlement as justification for his motion.

> Judicial estoppel bars a party from re-litigating an issue when: (1) the party assumed a position on the issue that is clearly inconsistent with a position taken in a previous case, or with a position taken earlier in the same case; (2) the positions were taken in proceedings involving the same adverse party; (3) the party taking the inconsistent positions received some benefit from his/her original position; and (4) the original position misled the adverse party so that allowing the estopped party to change his/her position would injuriously affect the adverse party and the integrity of the judicial process.

Syl. pt. 2, *West Virginia Dep't of Transp., Div. of Highways v. Robertson*, 217 W. Va. 497, 618 S.E.2d 506 (2005). It is clear from our review of the record herein that the elements of judicial estoppel have been satisfied in the instant proceeding.

First, in his legal malpractice case, Mr. Burnworth relied upon the impending stipulated settlement in his collection case to oppose the respondents' motion to consolidate the two cases and further relied upon his attorney's opinion that he would not be able to collect upon the judgment entered in the stipulated settlement in response to the respondents' summary judgment motion. The version of the stipulated settlement that Mr. Burnworth referenced in both of these instances was the first version, which was entered by the circuit court in the collection suit on April 19, 2012, and which contained the extinguishment and

15

cancellation language. Later, when Mr. Burnworth moved the court for relief from its summary judgment ruling in his legal malpractice action, he based his request for relief upon the corrected stipulated settlement order entered by the circuit judge assigned to the collection suit, which was entered *nunc pro tunc* and omitted the subject extinguishment and cancellation language. These two stipulated settlement orders clearly are inconsistent with each other, and Mr. Burnworth's reliance upon first the initial order and then the corrected order also evinces inconsistent positions taken in the same legal malpractice action.

Second, the inconsistent positions assumed by Mr. Burnworth were both in his legal malpractice action against the same adverse parties, *i.e.*, Mr. George, RAM, and Mr. Poffenbarger. Third, Mr. Burnworth benefitted from his original reliance upon the first stipulated settlement order insofar as he successfully opposed the respondents' motion to consolidate his two lawsuits. Fourth, the respondents and the circuit court relied upon the extinguishment and cancellation language of the initial stipulated settlement order as a basis for requesting and awarding summary judgment to the respondents. Permitting Mr. Burnworth to now rely upon the court's corrected stipulated settlement order would be to reward him for the perceived proverbial bait-and-switch occasioned by the court's replacement of its first stipulated settlement order with its second, *nunc pro tunc* order. Based upon this record and our law of judicial estoppel, we conclude that the circuit court correctly ruled that Mr. Burnworth was not entitled to relief from its earlier ruling granting

16

summary judgment to the respondents.  Therefore, we affirm the circuit court's August 10, 2012, order.

## IV.

## CONCLUSION

For the foregoing reasons, we conclude that the circuit court correctly awarded summary judgment to Mr. George, RAM, and Mr. Poffenbarger, and properly denied Mr. Burnworth's request for relief from that ruling.  Accordingly, the July 23, 2012, and August 10, 2012, orders of the Circuit Court of Kanawha County are hereby affirmed.

Affirmed.