No. 19-0361 – *Otto & Otto v. Catrow Law PLLC*

**FILED**
**November 2, 2020**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Workman, Justice, dissenting:

In its order granting respondent's motion for summary judgment, the circuit court refused to credit the testimony of petitioners' expert witness, an attorney based in College Park, Maryland, with more than forty-five years of relevant experience, on the ground that,

> [a]lthough the [petitioners] designated T. Summer Gwynn as a legal expert in this matter, he only provided a general synopsis of how he personally conducts real estate transactions in the [S]tate of Maryland. Gwynn is not and has never been licensed to practice law in West Virginia and has never been involved in a real estate transaction in West Virginia. Gwynn did not offer any opinions as to what is typically followed and adhered to be members of the bar in the Eastern Panhandle of West Virginia with respect to the transmission of wiring instructions for real estate closings.

Additionally, the court cited Mr. Gwynn's representation that he was not purporting to provide expert opinion as to West Virginia law – a fact of absolutely no consequence, because even the respondent's expert agreed that the duty of care owed by a settlement attorney is "a very general legal standard," one not based on any specific West Virginia law or case or rule of professional responsibility.

Thus, with the stroke of a pen, the circuit court denied petitioners the right to put their case before a jury, finding that because petitioners' expert practiced law ninety

miles away from Martinsburg, West Virginia, his forty-five years of experience meant nothing and his opinions would all be discounted. In short, the court applied an antiquated doctrine known as the "locality rule" to bar testimony that was clearly and unequivocally admissible under Rule 702 of the West Virginia Rules of Evidence.[1]

More than thirty years ago, this Court dealt a death blow to an ill-conceived doctrine that had for decades made it difficult – indeed, virtually impossible -- for victims of medical malpractice to seek redress for their injuries. In the single syllabus point in *Paintiff v. City of Parkersburg*, 176 W. Va. 469, 345 S.E.2d 564 (1986), we held that "[t]he 'locality rule' in medical malpractice cases is abolished," adding in the text of the decision that "we shall not miss it." *Id*. at 472, 345 S.E.2d at 567. In today's decision, the majority has breathed new life into Frankenstein's monster, tacitly approving the application of a locality rule in legal malpractice cases.[2] In my view, it is an insult to every member of the West Virginia Bar that in the absence of specific evidence to the contrary, it will be

---

[1] Rule 702(a) provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise."

[2] The majority relegates this critical issue to a single footnote, in which it states that "[w]e are aware that we have abrogated the locality rule[,]" but concludes that nonetheless, under the facts and circumstances of this case, "the circuit court did not abuse its considerable discretion." In my view, the circuit court had no discretion whatsoever to apply a rule that this Court abolished decades ago; to the contrary, the court's application of the locality rule was clear error.

assumed that the professional standard of care for West Virginia attorneys is lower than the standard for attorneys in other states, and that West Virginia attorneys may not follow best practices.

The locality rule, a fixture in our medical malpractice jurisprudence for close to a hundred years, held in relevant part that a physician was "only required to exercise such reasonable and ordinary skill and diligence as are ordinarily possessed and exercised by the average of the members of the profession in good standing, in similar localities[.]" *Dye v. Corbin*, 59 W. Va. 266, 270, 53 S.E. 147, 149 (1906). The result in *Dye* was a victory for the defendant physician, since the Court opined that a Ritchie County physician could not possibly be held to the same standard of care as a physician practicing in Cincinnati, Ohio.

The doctrine's erosion[3] first became evident in the case of *Hundley v. Martinez*, 151 W. Va. 977, 158 S.E.2d 159 (1967), where this Court found that a New York City physician could testify as an expert witness against a Charleston, West Virginia, physician, so long as he opined that the standard of care was a national standard of care.

---

[3] In *Thornton v. CAMC*, 172 W. Va. 360, 368-69, 305 S.E.2d 316, 325 (1983), the Court noted in dicta that the locality rule had been "virtually abandoned" in *Hundley*. This may have been an overstatement, as the *Hundley* Court was careful to maintain some vestige of the rule even as it refused its "strict application."

*Id*. at 993-94, 158 S.E.2d at 168-69. The *Hundley* Court explained the history of the locality rule as being "premised upon the thought that it was unfair to hold the country doctor to the same stringent standard as the supposedly more learned doctors practicing in large urban centers." 151 W. Va. at 990, 158 S.E.2d at 166-67. The Court opined, however, that,

> [t[his situation has changed materially . . . it being apparent that the doctor in the rural area now has available to him most of the same facilities as does the practitioner in the city. Due to highly improved modes of transportation, most physicians have at their disposal adequate to excellent hospital facilities. In addition, the now ready means of communication has permitted the doctor, regardless of his location, to keep abreast of recent medical developments and practices. Through the media of medical journals and associations many physicians studiously pursue postgraduate education.

*Id*. at 990, 158 S.E.2d at 167. Accordingly, the Court concluded that "the reasons for the strict application of the 'locality' rule have largely disappeared." *Id*. at 990-91, 158 S.E.2d at 167.

Thereafter, in *Paintiff*, this Court gave full voice to the injustice underlying application, strict or otherwise, of the locality rule: "The well known reluctance of doctors to testify against one another, which has been mentioned now and then in the decisions, may make this [expert medical testimony] difficult or impossible to obtain." 176 W. Va. at 471-72, 345 S.E.2d at 567 (internal citation omitted). Finding that the abolition of the locality rule had been presaged in *Thornton*, *see* note 3 *supra*, and further that "we had

4

entirely abolished the locality rule for nursing malpractice" in *Duling v. Bluefield Sanitarium, Inc.*, 149 W. Va. 567, 142 S.E.2d 754 (1965),[4] the Court concluded that

> [m]uch has been written about the obsolescence of the locality rule. We have nothing to add to the oceans of ink and forests of paper that have been pressed into service to hasten the rule's demise. We will only add that the locality rule is abolished in West Virginia, and we shall not miss it.

*Paintiff,* 176 W. Va. at 472, 345 S.E.2d at 567.

We have held that in a legal malpractice action, "the plaintiff must prove three things in order to recover: (1) the attorney's employment; (2) his/her neglect of a reasonable duty; and (3) that such negligence resulted in and was the proximate cause of loss to the plaintiff." Syl. Pt. 1, in part, *Calvert v. Scharf,* 217 W. Va. 684, 685, 619 S.E.2d 197, 198 (2005); *see also Kay v. Mcguirewoods*, LLP, 240 W. Va. 54, 62, 807 S.E.2d 302, 319 (2017); *Burnworth v. George*, 231 W. Va. 711, 717, 749 S.E.2d 604, 610 (2013) (per curiam); *Sells v. Thomas*, 220 W. Va. 136, 140, 640 S.E.2d 199, 203 (2006). With respect to the question of what constitutes a "reasonable duty" in a legal malpractice action, this Court has never before applied any sort of locality rule. To the contrary, the standard

---

[4] The Court's holding in *Duling* is slightly different from its characterization in *Paintiff*. In *Duling*, we found that the locality rule applied only to medical malpractice claims, and that only physician negligence constituted medical malpractice. This crabbed view of who was or wasn't a "health care provider" was relegated to the dust bin when the Legislature enacted the Medical Professional Liability Act, West Virginia Code § 55-7B-1 to -12 (2016).

applied in such cases is well established: "An attorney who undertakes to perform professional services for a client is required to exercise the knowledge, skill, and ability ordinarily possessed and exercised by members of the legal profession in similar circumstances." Syl. Pt. 1, *Keister v. Talbott*, 182 W. Va. 745, 391 S.E.2d 895 (1990). To this formulation, the court below implicitly substituted a few critical words, "the knowledge, skill and ability ordinarily possessed by members of the legal profession *in West Virginia, and particularly in Berkeley County, West Virginia*," and the majority opinion gives a seal of approval to this tacit adoption of a locality rule in legal malpractice cases.

First, let me state in the clearest terms: I defy anyone to argue that West Virginia attorneys do not have the "knowledge, skill, and ability" of lawyers anywhere else in this country. This State boasts a first-class law school; admission to the Bar requires passage of a rigorous bar examination; thereafter, all lawyers are required to complete twenty-four hours of continuing legal education every two years; and in this day and age, legal research requires the touch of a computer key, as opposed to the days when it might well have required a trip to Morgantown or Charleston to search a Dicentennial Digest. In short, attorneys in West Virginia stand on equal footing with attorneys in every other state in knowledge, skill, and ability. Second, the standard of care in this case has nothing to do with any West Virginia statute, case or rule; both Mr. Gwynn and the respondent's expert agreed on this. Therefore, the fact that Mr. Gwynn isn't versed in West Virginia law is

6

completely irrelevant. Third, whatever may be the "practice" of settlement lawyers in Berkeley County, West Virginia, is also irrelevant; the question is whether that practice comports with the standard of care for attorneys practicing in the same area of law.

The majority also upholds the circuit court's finding that petitioners failed to prove a breach of duty on respondent's part, because petitioner did not put forward specific evidence showing that the respondent had ever received any of Old Republic's various bulletins warning of phishing schemes targeting closing funds. I cannot agree with this myopic view of the evidence presented by petitioners. As acknowledged by the majority, petitioners demonstrated that respondent was a title agent for Old Republic; that it received updates from Old Republic regarding "important information and events in the real estate industry"; and that Old Republic had sent out bulletins warning of the exact phishing scheme used in this case.[5] I believe that this evidence was sufficient to take petitioners' case to the jury; let the respondent establish, if it could, that it did *not* receive the Old Republic bulletins.

---

[5] The majority takes this one step further, stating that petitioners did not demonstrate "that [the Old Republic bulletins] had even been sent to lawyers in West Virginia." One is hard-pressed to imagine why Old Republic would exclude its West Virginia agents from receiving information sent to agents in other states; as noted *supra*, there is no state law, case, or regulation that makes West Virginia real estate settlement practices different in any way from the practices in other states.

In summary, I believe that the petitioners' evidence was sufficient to withstand summary judgment, that their expert should have been permitted to testify, and that a jury should have been entrusted with the responsibility to determine liability and damages in this unfortunate case. Accordingly, I dissent. I am authorized to state that Justice Hutchison joins in this dissenting opinion.